Argued July 20, resubmitted in banc September 12, modified
October 30, reconsideration denied December 19, 1978, petition for
review allowed March 13, 1979, 285 Or 479

In the Matter of the Marriage of
MEIER, *Respondent,*
*and*
MEIER, *Appellant.*
(No. 400-061, CA 10498)

585 P2d 713

Constance C. Jarvis, Portland, argued the cause and filed the brief for appellant.

Ira L. Gottlieb, Portland, argued the cause for respondent. With him on the brief was William F. Schulte, Jr., Portland.

TANZER, J.

**TANZER, J.**

This is an appeal by the mother from an order modifying the award to her of custody of the minor child of the parties, Justin. The 1974 decree of dissolution incorporated that provision from the property settlement agreement:

> "Wife shall not change her residence or that of the minor child from the greater Portland, Oregon, area without prior Order of the Court herein being first obtained upon proper prior notice to Husband."

The mother moved for an order permitting her to move with the child from Oregon to Kingston, Ontario, Canada. The father then moved for an order to change custody of Justin to him or, in the alternative, for an order prohibiting and restraining the mother from leaving this jurisdiction with the child. The trial court denied the mother's motion and granted the father's motion to change custody of Justin to father in the event that mother moves to Canada. The latter part of the order provides:

> "The motions of the Petitioner, GARY MAX MEIER, are granted insofar as the minor child of the parties, JUSTIN, shall not be taken to Canada, and if the Respondent does move to Canada, then custody of the child shall change from the Respondent to the Petitioner. As long as the Respondent remains within the jurisdiction of this Court, she shall continue to have custody of the minor child of the parties until further order of the Court."

The mother is a Canadian citizen who has resided in the United States for about ten years. She has no close family members in the Portland area where the father lives. Her reasons for desiring to move are professional advancement and family ties. Justin, 7, has a close and loving relationship with both parents and either parent would be competent as a custodial parent.

The trial court found that it was not in the best interests of the child to permit the move to Canada

because: (1) the child's excellent relationship with his father would be disrupted and could not be replaced by the mother's family in Canada; and (2) the move would cause a general upheaval in the boy's life.

Upon review de novo, the issue is whether, as a matter of discretion, custody should be conditioned upon a requirement that the mother not move to Canada with the child. The underlying issue is whether the domestic relations court may, by the imposition of conditions upon an award of custody, make parental decisions which would otherwise be made by the custodial parent.

The context in which the issue is presented is so interlaced with competing personal and social considerations—the social and economic dynamics of a mobile society, the increasing numbers of mothers who choose to or must pursue careers, the desirability of maintaining the intrinsically incomplete relationships between children and noncustodial parents and the harshness of attenuating those relationships—that no sensitive judge can conclude with confident conviction that any decision is altogether good. In such a situation, absent exceptional circumstances, it is better for people to make their own decisions according to the authority the law has reposed in them than for the courts to intervene into their lives to make their decisions for them.

Were we writing on a clean slate, we could logically hold that the court is authorized by ORS 107.105 to award custody to a parent; that custody includes authority to make parental decisions such as choice of residence; that there is no authority for the court to substitute its parental judgment in the form of conditions imposed upon custody; and that the court, after making an award, should get out of the litigants' lives unless continuation of the status quo would be injurious to the child and custody must be modified to avoid the injury, in which case ORS 107.135 authorizes change of custody.

■ The placement of a condition upon custody is a supervisory act *in loco parentis* rather than an adjudicative act. Ordinarily, the court may not assume parental decision-making authority unless, under ORS 419.476, the court assumes the *parens patriae* function and makes the child a ward of the court due to misbehavior, neglect or need. Otherwise, the court is not statutorily authorized to intervene and the child remains a ward of the custodial parent.

The slate, however, is not entirely clean; but neither is it entirely filled. The Supreme Court has held as an assumption rather than a reasoned conclusion in *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960), that a motion to modify an award of custody which restricts the custodial parent's freedom to move from the jurisdiction is addressed to the court's discretion. The principles by which that discretion is to be applied, however, have not been defined other than by formulary invocation of the phrase "best interests of the child." That rubric is not helpful, however, because any chancellor could justify any result under it. The judicial task of this case is to give legal form and substance to the chancellor's discretion which the Supreme Court has held to exist.

To begin with, it is noteworthy that by virtue of ORS 107.135 which authorizes modification, every award of custody contains an implicit condition that custody may be changed if circumstances change. The double effect of an express condition is to authorize the court to modify for lesser changed circumstances, *see, Perley v. Perley,* and to anticipate such change.

■ First, because the former effect, easy modification, is in derogation of the change-of-circumstances rule of ORS 107.135, discretion to impose or enforce such conditions should be exercised with restraint; particularly, judicial discretion should not be exercised to regulate decisions such as choice of residence which are normally parental, not judicial, decisions unless due to exceptional circumstances there is a clear

danger to the child's well-being. Second, such a discretionary condition should be imposed only where there are reasons of danger, demonstrable bad faith or impracticality which make it desirable that the situation be anticipated abstractly rather than dealt with on the facts after occurrence. Third, discretion should rarely be exercised to impose conditions which, like this one, are not capable of practical enforcement.

■ ■ Additionally, a custody order must provide for such visitation by the noncustodial parent, if any, as may be reasonable under the circumstances. ORS 107.105. Visitation is in the interest of both the child and the noncustodial parent and both interests should be promoted. Thus, if the noncustodial parent changes residence, arrangements for continuing visitation should be made by modification if necessary. Conversely, if the custodial parent changes residence, then, if the move is motivated in bad faith such as a desire to discourage visitation, custody may either be changed or made subject to condition. If there is no bad faith, then the visitation order should be modified to allow the optimum visitation permitted by the circumstances.

■ ■ Applying those principles of discretion, a conditional award of custody is inappropriate in this case. Choice of residence is a parental decision which the custodial parent should be able to make without judicial second-guessing, supervision or dictation unless that choice is made for ulterior reasons such as to defeat the rights of the noncustodial parent to visitation. Here, despite father's suspicion, there is no persuasive evidence of bad faith. Judicial intervention is neither required nor desirable in this case. This child is capable of adjustment and Canada is a civilized nation in which it appears from afar that children are able to live wholesome lives. The prospective move poses no danger to the health or safety of the child which requires judicial anticipation. Furthermore, if a custodial parent moves to Canada without consent, there is no practical way to enforce the order

of the court not to do so. Unfortunately, the right of the father to regular visitation would be diminished, but his right cannot be an absolute anchor on the mother. Moreover, his visitation rights are enforceable under Canadian law.[1]

Therefore, the decree is modified to allow mother's motion to move to Canada with Justin, to provide specifically for visitation by the father with Justin for the entire month of July and for one week each year in alternative years during Christmas or spring vacation at the father's home or Justin's home at the option and expense of the father, and, anticipating the mother's increased income, for a reduction in support payments from $150 to $75 to partially offset the cost of travel. If the specified times of visitation are not satisfactory to the parties, they may be changed by stipulation.

Modified. Costs to neither party.

**THORNTON, J.,** dissenting.

I find myself in total disagreement with the majority opinion and the new child custody rules announced therein.

First, the majority opinion is based on a false premise. It states:

> "* * * [T]he issue is whether, as a matter of [judicial] discretion, custody should be conditioned upon a requirement that the mother not move to Canada with the child. * * *"

This ignores the fact that here the parties specifically agreed in writing *after* they separated and *before* suit that the wife would not change the residence of the minor child "without prior Order of the Court." The court in placing this restriction in the 1974 decree was simply approving the terms the parents had already agreed to between themselves. Thus, the restriction on moving the child, which the majority inveighs against

---

[1] *See,* The Infants Act, Ont Rev Stat, ch 222, §1(1) (1970); *Petryczka and Petryczka,* 2 Ont Rep 866 (1977).

and strikes down, came into being not by "judicial second-guessing," as the majority characterizes it, but by express agreement of the parties.

My second and greatest objection to the majority's decision is directed to the result, namely, the adverse effect on this 7-year-old boy of summarily uprooting him from his home, school and friends in Oregon and transplanting him to Canada. I am convinced by the evidence presented in this case that the majority's decision is contrary to the best interests of this child. Further, I am greatly concerned over the emotional shock this drastic move is going to have on this young boy.

The trial court found that it was not in the best interests of the child to permit the move to Canada. The court based its ruling on two things: (1) that the child's close relationship with his father would be disrupted and could not be replaced by the mother's family in Canada; and (2) the move would cause a general upheaval in the boy's life. The court also expressed concern about the problem of enforcing the father's visitation rights.

My reading of this record convinces me that the trial judge was right in his conclusions.

The record reflects that Justin and his father have an exceptionally warm and loving relationship. The mother, apparently with the support of her family, has on more than one occasion in the past impeded and interfered with the father's visitation rights. I fear that the effect of the majority's decision today, which is essentially substituting the presence of the mother's family in Canada for the father's, will be to write "finis" to the close relationship between Justin and his father for all practical purposes. True, the majority would provide that Justin will spend each July with his father and one week each year in alternate years during Christmas or spring vacation. But if the mother and her parents choose to obstruct the father's visitation rights, as they have done in the past, the

father may well encounter great difficulties in trying to enforce these rights in the courts of a foreign country, not to mention the sizeable legal expense he will be put to. Further, despite these efforts the father may still ultimately be unable to persuade the foreign court to enforce even the limited visitation rights granted him by this court.

Giving due weight to the opinion of the experienced trial judge who saw and heard the parents and their witnesses firsthand, *Rea v. Rea,* 195 Or 252, 261, 245 P2d 884, 35 ALR2d 612 (1952), I conclude that the interests of this child would be far better served by maintaining the status quo, as anticipated by both parents at the time of the original decree, under which he can have the benefit of the care, nurture and parental companionship and love of both parents. Liberal contact with both parents is essential to Justin's development. As I have already indicated, I feel that taking his father out of the picture after his having helped raise and care for him all these years is apt to have a very serious, traumatic effect on this young boy, and may well be productive of irreparable long-range damage to this child.

For the above reasons I respectfully dissent.

Lee and Buttler, JJ., join in this dissent.