Argued April 4, Court of Appeals decision reversed;
trial court decision affirmed May 22, 1979

In the Matter of the Marriage of
MEIER, *Petitioner,*
*and*
MEIER, *Respondent.*
(TC 400-061, CA 10498, SC 25948)
595 P2d 474

Ira L. Gottlieb, Portland, argued the cause and filed
the brief for petitioner. With him on the brief was
William F. Schulte, Jr., Portland.

Constance C. Jarvis, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent and Linde, Justices. **

TONGUE, J.

**Holman, J., did not participate in this decision.

**TONGUE, J.**

This case arises from a motion by a mother to modify the decree of dissolution which awarded her custody of a minor child. By that motion the mother sought permission to move with the child to Ontario, Canada. The trial court, after hearing testimony, denied that motion. The Court of Appeals reversed. 36 Or App 685, 585 P2d 713 (1978). We granted review.

The basic facts in this case are not in dispute. The parties were married in 1969, and one child, Justin, was born in 1970. On February 20, 1974, the father petitioned for divorce and requested custody of Justin. At that time the father also requested and obtained from the court an order awarding temporary custody of Justin to him and prohibiting either parent from removing the child from Oregon. The mother then also petitioned for divorce and requested custody of Justin.

On November 27, 1974, a decree of dissolution was entered, incorporating and approving a property settlement agreement dated November 22, 1974, by which the parties agreed as follows:

"1. *Custody and Support.*

"a. The care, custody and control of the minor child of the parties, James Justine Meier, born December 8, 1970, shall be awarded to wife, subject to husband's rights of reasonable visitation as follows: Husband shall have the child every other weekend and one weekday evening during the intervening two weeks; three weeks during the summer months and reasonable sharing of the holidays.

"b. Wife shall not change her residence or that of the minor child from the greater Portland, Oregon, area without prior Order of the Court herein being first obtained upon proper prior notice to Husband.

"* * * * *"

On January 17, 1978, the mother filed a motion requesting permission of the court to move with Justin (then age 7) to Kingston, Ontario, Canada. In her affidavit in support of that motion, the mother recited

that she had lived in Canada for twenty-four years prior to moving to the United States and her family still lived in Ontario; that she had received an offer of a job there in her profession as a nurse practitioner for a higher salary; and that "[i]n Canada I will be able to continue to provide an adequate home and good school and care" for Justin.

The father then moved the court for an order:

"* * * requiring the respondent, PATRICIA ANNE MEIER, to appear and show cause why the custody of the parties' minor child, JUSTIN MEIER, should not be changed from the respondent to the petitioner, or in the alternative, to show cause why the respondent should not be prohibited and restrained and enjoined from leaving this community with the parties' minor child or, in the alternative, to show cause why this court should not establish visitation rights for the petitioner with the parties' minor child * * *."

In support of that motion, the father stated in his affidavit that the provision in the property settlement agreement which required permission before Justin could be removed from Oregon was intended to be a safeguard of his access to Justin; that he had always exercised his visitation rights despite alleged disruptions by the mother, and that "by taking our son from Oregon and the environment he has known she [the mother] would be doing great harm" to Justin.

A hearing was held on these two motions on February 14, 1978, at which time the trial court received evidence and heard the testimony of witnesses.

The mother offered testimony that job opportunities in her field were limited in Oregon compared to Canada, and that she needed the increase in salary available in the job she had been offered because of increased expenses due to the birth in 1977 of her daughter (of whom petitioner is not the father). The mother has strong family ties in Canada and feels that the influence of her extended family would be very positive for Justin. She also testified that Justin has a

reading problem and needs and is now receiving special tutoring. According to the mother, such tutoring would also be available in Canada and schools in Canada are comparable, but it would be necessary for Justin to learn French as a second language. The mother feels that this would be a positive effect of the move and would not pose difficulties for Justin in connection with his reading problem. As for visitation, should the move to Canada be allowed, the mother proposed that Justin spend an extended period of time with the father each summer plus alternate holidays, the equivalent of approximately five weeks per year. The father would be free to visit at any time, and she would be willing to accept reduced child support to pay the increased costs of visitation. Finally, it appears from the testimony that the mother and Justin have a very close and warm relationship, and she stated that she would not move to Canada by herself and leave Justin if her motion were denied.

The father offered testimony that he and Justin also have a very good and warm relationship. The father and son engage in many activities during visitation periods. Witnesses also stated that the father had a positive and calming influence on the child. The father believes that the removal of the child from his father, school and friends would be very disruptive. The father is also concerned that, due to alleged obstructions of his visitation rights in the past by the mother and her family, allowing Justin to be taken to Canada would jeopardize his future relationship with the child. The father testified, however, that he would not be seeking to change custody of the child if the mother were going to stay in the Portland area.

After receiving the evidence and hearing the testimony the trial court made the following oral finding:

" * * * [P]erhaps it's to the best interests of Mrs. Meier to be able to make this change, but * * * I see nothing in the evidence to justify a finding that it is to the best interests of this child to uproot it from its present circumstances and that the substitution of

the family in Canada is the equivalent of the attention and concern and affection that the father here gives to the child."

The trial court therefore issued an order which provided that:

"1. The motion of the Respondent, PATRICIA ANNE MEIER, to be allowed to remove JUSTIN from the jurisdiction of this Court to Canada is hereby denied.

"2. The motions of the petitioner, GARY MAX MEIER, are granted insofar as the minor child of the parties, JUSTIN, shall not be taken to Canada, and if the Respondent does move to Canada, then custody of the child shall change from the Respondent to the Petitioner. As long as the Respondent remains within the jurisdiction of this Court, she shall continue to have custody of the minor child of the parties until further order of the Court."

The mother appealed to the Court of Appeals, stating the "question presented" to be as follows:

"Is a custodial parent required to live permanently in the state which awards custody or lose custody if she leaves the jurisdiction of this court?"

In response to that question Judge Tanzer, in writing for the majority, said that:

"Were we writing on a clean slate, we could logically hold that the court is authorized by ORS 107.105 to award custody to a parent; that custody includes authority to make parental decisions such as choice of residence; that there is no authority for the court to substitute its parental judgment in the form of conditions imposed upon custody; and that the court, after making an award, should get out of the litigants' lives unless continuation of the status quo would be injurious to the child and custody must be modified to avoid the injury, in which case ORS 107.135 authorizes change of custody."

The Court of Appeals then recognized, however, the holding by this court in *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960), that a motion to modify an award

of custody which restricts the custodial parent's freedom to move is addressed to the court's discretion, to be exercised based upon its determination of what is in the "best interests of the child." 36 Or App at 689. Judge Tanzer then attempted to "give legal form and substance" to that discretion beyond what he characterized as the "formulary invocation of the phrase 'best interests of the child,'" saying "[t]hat rubric is not helpful." Judge Tanzer stated four factors to be considered. First, "judicial discretion should not be exercised to regulate decisions such as choice of residence which are normally parental, not judicial, decisions unless due to exceptional circumstances there is a clear danger to the child's well-being." Second, "such a discretionary condition should be imposed only where there are reasons of danger, demonstrable bad faith, or impracticality which make it desirable that the situation be anticipated abstractly rather than dealt with on the facts after occurrence." Third, discretion should "rarely be exercised to impose conditions which, like this one, are not capable of practical enforcement." Fourth, "a custody order must provide for such visitation by the noncustodial parent, if any, as may be reasonable under the circumstances." 36 Or App at 689-90.

Applying these factors, the Court of Appeals concluded that:

"* * * Choice of residence is a parental decision which the custodial parent should be able to make without judicial second-guessing, supervision or dictation unless that choice is made for ulterior reasons such as to defeat the rights of the noncustodial parent to visitation. Here, despite father's suspicion, there is no persuasive evidence of bad faith. Judicial intervention is neither required nor desirable in this case. This child is capable of adjustment and Canada is a civilized nation in which it appears from afar that children are able to live wholesome lives. The prospective move poses no danger to the health or safety of the child which requires judicial anticipation. Furthermore, if a custodial parent moves to Canada

[443]

without consent, there is no practical way to enforce the order of the court not to do so. Unfortunately, the right of the father to regular visitation would be diminished, but his right cannot be an absolute anchor on the mother. Moreover, his visitation rights are enforceable under Canadian law." (36 Or App at 690-691, footnote omitted)[1]

Judge Thornton, joined by two other members of the Court of Appeals, dissented. Judge Thornton stated (at 692):

"The trial court found that it was not in the best interests of the child to permit the move to Canada. The court based its ruling on two things: (1) that the child's close relationship with his father would be disrupted and could not be replaced by the mother's family in Canada; and (2) the move would cause a general upheaval in the boy's life. The court also expressed concern about the problem of enforcing the father's visitation rights.

"My reading of this record convinces me that the trial judge was right in his conclusions."

We granted review because of our concern whether the Court of Appeals correctly applied the law as stated in our previous decision in *Perley v. Perley,* 220 Or 399, 349 P2d 663 (1960).

We begin our consideration of this case by noting that the parties, by the provision of their property settlement agreement previously quoted, agreed that the court would make the determination of whether the child would be permitted to be removed from Oregon.[2] By doing so, they have presented the court

---

[1] The Court of Appeals then modified the decree "to allow mother's motion to move to Canada with Justin, to provide specifically for visitation by the father with Justin for the entire month of July and for one week each year in alternative years during Christmas or spring vacation at the father's home or Justin's home at the option and expense of the father, and, ancitipating the mother's increased income, for a reduction in support payments from $150 to $75 to partially offset the cost of travel. * * *" 36 Or App at 691.

[2] No contention has been made in this case that the court lacks the power to restrict the removal of the child from the state, nor has any

with a difficult question fraught with competing interests. As stated in 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, 14-81, § 14(7) (1976):

> "* * * There is no more effective way of preventing a non-custodial father from seeing his child than to remove it to a distant point. Of what practical use to a father are his visitation rights, decretal or contractual, if he has to go hundreds, if not thousands, of miles to exercise them? On the other hand, would it not be unconscionable if the custodial mother, to preserve the father's rights, was tethered to one place permanently, regardless of legitimate imperatives to move?"

■ Despite the problem arising from these competing interests of the parents, the rule in Oregon is clear. The determination whether to permit or prohibit removal of the child from the state is addressed to the sound discretion of the court, the "paramount consideration" being the best interests of the *child. Perley v. Perley,* 220 Or 399, 401, 349 P2d 663 (1960); *Levell v. Levell,* 183 Or 39, 44, 190 P2d 527; *Edwards v. Edwards,* 191 Or 275, 280, 227 P2d 975 (1951).

This view is in accordance with the weight of authority. As stated in an annotation in 154 ALR 552, 556 (1945):

constitutional challenge been raised in this case. *See, e.g.,* Bodenheimer, "Equal Rights, Visitation, and the Right to Move," *Family Advocate* (a journal by the ABA Family Law Section), Summer, 1978. In this regard, we note the following quote from *Fritschler v. Fritschler,* 60 Wis 2d 283, 208 NW 2d 336, 339 (1973), quoting with approval from *Whitman v. Whitman,* 28 Wis 2d 50, 135 NW 2d 835 (1965):

> " 'A divorced man or woman is free to move about and pursue his or her life and living without restraint from his former spouse; as divorced parents of minor children they may be required to curtail these liberties or forfeit some of their rights to custody or visitation, as the case may be, consistent with the best interests of the children and the rights of the other parent.' 28 Wis 2d at p. 58, 135 NW 2d at p. 839.

> "Thus one having custody of a child is not free to move about the country disregarding state lines, as that person would be if she did not have custody. The parent's responsibility to the child and its interests and the rights of the other parent qualify and limit the right and liberty to move about freely—that is one of the burdens of having custody of minor children."

"The general rule that in matters affecting the custody of a child the court will be governed primarily by the welfare and best interests of the child applies in determining whether the court will * * * grant or refuse permission to remove a child from the jurisdiction in a divorce or separation case."

As stated in 1 Lindey, *supra,* at 14-84, § 14(7)(A):

"It has been repeatedly held contrary to public policy to permit the child of divorced parents to be removed from the state by the custodial parent, thereby depriving the child of a reasonable opportunity to have continued contact with the other parent. Where the divorce decree grants visitation rights, the law contemplates that the children will remain in the state so that the rights may be exercised.

"But this rule must yield to the overriding consideration of the child's best interests. The decision rests within the sound discretion of the trial court.

"* * * * *

"The court will decide each case on its facts, always mindful of the cardinal element of the child's welfare." (citing *Perley v. Perley, supra*) (footnotes omitted)

*See also* Clark, *The Law of Domestic Relations,* §§ 17.4 and 17.7, pages 587, 600-601 (1968).

It is also well-settled in Oregon that in making the determination of the best interests of the child, the trial judge is in a far better position to weigh the various factors which enter into the problem, and his decision should not lightly be disturbed by a court on appeal. *Perley v. Perley, supra,* 220 Or at 401; *Edwards v. Edwards, supra,* 191 Or at 280-81. As stated in *Rea v. Rea,* 195 Or 252, 279, 245 P2d 884 (1952):

"The decision of the trial court in custody matters, when tested by appeal, comes here weighted with the presumption that the court has properly exercised its judicial discretion in determining what is for the best interest of the child."

In this case, the primary question to be decided by the trial judge was whether it would be in the child's best interests to move to Ontario, Canada, with his

mother or remain in Portland.[3] After a hearing at which he received evidence and heard the testimony of witnesses (including the mother and father), the trial judge concluded that the reduction in or loss of "the attention and concern and affection that the father here gives to the child" and the "tremendous upheaval" in the boy's life which would result from a move to Canada outweighed the benefit of increased contact with the mother's extended family and any other benefit to the child resulting from the move to Canada. For this reason, the trial judge concluded "I just cannot find it is to the best interests of this child to permit the move * * *."

■ We have reviewed the record in this case and, although the question is a difficult one, we agree with this finding by the trial court.

We recognize that the test—"the best interests of the child"—does not provide as specific a guide to trial courts for application in cases such as this as might be most helpful to them. In our view, however, the four factors stated by the Court of Appeals to be determinative in the exercise by the trial court of its discretion in such cases are not so much factors which are relevant to a determination of whether it would be in the "best interests of the child" to permit or refuse to permit the custodial parent to move to another state or country, as they are relevant to a determination of the question whether the custodial parent has a "right" to do so or whether, as between the two parents, it would be "equitable" to permit the custodial parent to do so. Indeed, this appears to be the primary emphasis of the majority opinion by the Court of Appeals.

The Court of Appeals did not make a determination that the interests of the child would be *better* served by permitting his removal to Canada than by refusing

---

[3] The question of a change in custody to the father was not squarely presented. The mother testified she would not move to Canada if not permitted to take Justin with her.

permission for such a move. Instead, the Court of Appeals held (at 690) that:

> "* * * This child is capable of adjustment and Canada is a civilized nation in which it appears from afar that children are able to live wholesome lives. The prospective move poses no danger to the health or safety of the child which requires judicial anticipation."

This same reasoning could be used to justify the mother's moving to Switzerland and placing Justin in a Swiss boarding school. It misses the mark by failing to determine what is in the best interests of the child. In short, the Court of Appeals departed from the rule as stated by this court in cases such as *Perley v. Perley, Levell v. Levell,* and *Edwards v. Edwards,* and which we now reaffirm.

For these reasons, the decision of the Court of Appeals must be reversed and the order of the trial court affirmed.[4]

---

[4] At the time of oral argument the question of the scope of review by this court of decisions by the Court of Appeals in such cases was raised and supplemental briefs were permitted on that issue. Counsel for the mother submitted a brief urging this court to adopt the more limited standard of review applicable in workers' compensation cases, citing *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 568, 491 P2d 997 (1971). Because of the basis on which we decide this case, we need not decide that question.