Argued and submitted July 28, reversed December 8, 1982, reconsideration denied March 4, reconsideration denied on attorney fees September 16, petition for review denied October 25, 1983 (295 Or 840)

In the Matter of the Marriage of

## JONES,
*Respondent,*
*and*
## JONES,
*Appellant.*

(No. D7906-64843, CA A23705)

654 P2d 1135

Ralph Bolliger, Portland, argued the cause for appellant. With him on the brief were Lewis B. Hampton and Bolliger, Hampton & Tarlow, Portland.

William R. Hutchison, Jr., Portland, argued the cause for respondent. With him on the brief were David R. Maier and Hutchinson, Hutchison & Hooper, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Mother appeals the trial court's denial of her motion to hold father in contempt and its allowance of father's motion to modify an original custody award to give him custody of the parties' son. We reverse.

The marriage of the couple was dissolved in March, 1980. The decree stated that mother

"* * * shall not change her residence or that of the minor children from the greater Portland, Oregon area without prior order of the court herein being first obtained upon prior notice to [father]."

On November 17, 1980, father and mother entered into a stipulated order that allowed mother to change the place of her residence and that of the children to Saudi Arabia, the birth place of mother's new husband. The order included a clause stating: "This order is without prejudice to the right of [father] to petition for modification."

Mother moved to Saudi Arabia in December, 1980, and the son later joined her in February, 1981. He returned to Portland to visit father for a scheduled summer vacation in June, 1981. Soon after son's arrival in Portland, father asked mother if son could stay longer than originally scheduled. Mother agreed to consider that possibility.

Mother called father on July 26, 1981. She was upset about the death of one of her colleagues in an automobile accident. At that time, she told father that she thought the son should remain in Portland, partially for his safety. On August 23, mother received a letter from father requesting temporary or permanent custody. She then told father by telephone that she missed her son and that she did not think she would allow him to stay in Portland. On August 24, mother called father's home and spoke with the parties' daughter. At that time she learned, by her account for the first time, that father intended to remarry and to enroll their son in a Portland school. When mother again called father on August 30, father told her that he had, in fact, enrolled their son in a Portland school. Mother stated that she wanted the son to return to Saudi Arabia. On September 6, father informed mother that he did not intend

to return their son. Mother spoke with the son on September 13 and, according to her testimony, he expressed a desire to return to Saudi Arabia.

On September 22, 1981, father filed a motion for change of custody. Mother thereafter moved the Court to hold father in contempt for wilful and deliberate refusal to return their son to mother. On January 18, 1982, the court entered its order, in which it found:

"(1)   That the Stipulated Order of November 17, 1980 was with the intent that the best interests of the child on change of residence provision in the decree be preserved;

"(2)   That there has not occurred since the time of original decree any substantial change of circumstances of the mother which are adverse to the child Christopher; and

"(3)   That the best interests of Christopher are served *at this time* by residence within the state and contact with the father." (Emphasis supplied.)

The court then ordered that custody of the child be changed from mother to father and denied mother's motion to hold father in contempt.

On appeal, mother argues that father is required to show a substantial change of circumstances in order to effect a change of custody and that he has failed to do so. Father argues that the statement in the stipulation that the order was "without prejudice to the right of petitioner to petition for modification" preserved for later determination the issue of whether the stipulated move to Saudi Arabia was in the best interests of the son. He reasons that he has established that it was in the child's best interests to live with him in Portland and that he therefore was entitled not only to have the son return to Portland but also to be given custody of him. Alternatively, father argues that he has shown a substantial change of circumstances sufficient to justify the custody change.

Father's first argument—that the stipulation allowing mother to move the son preserved the issue of whether such a move was in the son's best interest—is based upon his conclusion that the original decree in this case is like that in *Meier and Meier,* 286 Or 437, 595 P2d

474 (1979). Father is descriptively correct. In *Meier,* a dissolution decree provided that the custodial parent, the mother,

"* * * shall not change her residence or that of the minor child from the greater Portland, Oregon, area without prior Order of the court herein being first obtained upon proper prior notice to [the father]."

The provision in the present case is virtually identical.

The fact that the *provision* is parallel does not, however, necessarily assist us very much, because the ways this case and *Meier* developed factually are so different. In *Meier,* when the mother desired to move with the child to reside in Canada, the father objected. A trial court then determined that, while the move might be in the *mother's* best interest, it was not in the *child's.* The court entered an order *denying mother the right to move the child.* Because the mother had indicated that she would not move to Canada unless she was allowed to take the child, no change of custody was ordered. 286 Or at 441-42, 447 n 3.

The mother in *Meier* sought review in this court. *Meier and Meier,* 36 Or App 685, 585 P2d 713 (1978). We noted that the issue in such cases, where the decree reserved to the trial court the right to decide if a child could be removed from the state by the custodial parent, was whether such a move would be in the "best interests of the child." 36 Or App at 689 (citing *Perley and Perley,* 220 Or 399, 349 P2d 663 (1960)). We then proposed four factors that should be applied by trial courts in exercising their discretion under *Perley* and, applying those factors, reversed. 36 Or App at 690-91.

On review, the Supreme Court reversed this court's decision and reinstated that of the trial court. The court said,

"Despite the problem arising from these competing interests of the parents, the rule in Oregon is clear. The determination whether to permit or prohibit removal of the child from the state is addressed to the sound discretion of the court, the 'paramount consideration' being the best interests of the *child." Meier and Meier, supra,* 286 Or at 445. (Emphasis in original; citations omitted.)

The court, after reviewing the facts of the case and pertinent authorities, then went on to hold:

> "We recognize that the test—'the best interest of the child'—does not provide as specific a guide to trial courts for application in cases such as this as might be most helpful to them. In our view, however, the four factors stated by the Court of Appeals to be determinative in the exercise by the trial court of its discretion in such cases are not so much factors which are relevant to a determination of whether it would be in the 'best interests of the child' to permit or refuse to permit the custodial parent to move to another state or country, as they are relevant to a determination of the question whether the custodial parent has a 'right' to do so or whether, as between the two parents, it would be 'equitable' to permit the custodial parent to do so. Indeed, this appears to be the primary emphasis of the majority opinion by the Court of Appeals.
>
> "The Court of Appeals did not make a determination that the interest of the child would be *better* served by permitting his removal to Canada than by refusing permission for such a move. Instead, the Court of Appeals held (36 Or App at 690) that:
>
>> " '* * * This child is capable of adjustment and Canada is a civilized nation in which it appears from afar that children are able to live whole-some lives. The prospective move poses no danger to the health or safety of the child which requires judicial anticipation.'
>
> "This same reasoning could be used to justify the mother's moving to Switzerland and placing Justin in a Swiss boarding school. It misses the mark by failing to determine what is in the best interests of the child. In short, the Court of Appeals departed from the rule as stated by this court * * * and which we now reaffirm." 286 Or at 447-48. (Emphasis in original.)

In this case, in contrast to *Meier,* the parties stipulated to the move by the custodial parent, so that she has now established a residence far from Oregon. Mother cannot, as could the mother in *Meier,* readily let her choice of abode be made by the trial court's decision—moves to and from Arabia are not so readily arranged. It is in light of this fact—which the parties must have contemplated when they entered into their stipulation—that we examine the language of the stipulation.

The stipulation is embodied in an order presented by the parties to the trial court. It provides, in pertinent part:

"Based upon the stipulation of the parties, as evidenced by their signatures on the face of this Order, this court

"ORDERS that [mother] is allowed to change her residence and the residence [of] the minor children from the greater Portland area to Taif, Saudi Arabia; * * *

"* * * * *

*"This Order is without prejudice to the right of [father] to petition for modification."* (Emphasis supplied.)

Mother argues that the emphasized language simply means that father retained the right, following the stipulation, to petition for a change of custody based on a change of circumstances. Father argues that such a construction would, to all intents and purposes, nullify the provision, because he would have had such a right even without the provision. He makes this argument in spite of the hardship it works on mother to require her to litigate now the question of whether staying in Saudi Arabia is in the son's best interest.

We conclude that the correct construction of the stipulation is that urged by mother. Although it is true, as father argues, that such a construction merely affirms father's statutory right to petition for custody, it nonetheless seems likely that such is all the parties contemplated. The stipulation was prepared by counsel; it was not written or prescribed by the trial court. It is a precautionary "anchor to windward" for father, reminding the parties that his rights are not to be lost merely because his son leaves the country.[1] It follows that the trial court erred in changing custody without requiring a showing of a change of circumstances. We now turn to that consideration.

We pointed out in *Remillard v. Remillard,* 30 Or App 1111, 1114, 569 P2d 651 (1977), that there are two

---

[1] Even were we to agree with father's construction of the stipulation, that would not mean that father is entitled to the decree he received in this case. A showing by father that living in Saudi Arabia is not in the son's best interests might, under *Meier,* justify an order compelling mother to return the son to the Portland area. It would not, however, entitle father to a *change of custody* —the relief he obtained here—without some further showing that mother refuses to return her son rather than lose custody. No such showing was made here.

requirements for determining whether a change of custody is warranted:

> "* * * The parent seeking a change in custody must show that subsequent to the last custody modification the capacity of either parent to properly care for the child has changed * * * [a]nd, considering all the circumstances, it would be in the best interest of the child to make the change."

The first requirement in *Remillard* may be met by a showing that the noncustodial parent's circumstances have improved so that he or she can now adequately provide for the child. *Greisamer and Greisamer,* 276 Or 397, 400, 555 P2d 28 (1976). Father established at the hearing that his circumstances had changed since the original custody determination so as to make him more capable of properly caring for the son. We are not satisfied, however, that a change of custody from mother to father would satisfy the second requirement, *i.e.,* that the change would be in the best interest of the child. The trial court found that "* * * there has not occurred any substantial change of circumstances of the mother which are adverse to Christopher Newell Jones." Father implicitly acknowledges the validity of that conclusion by resting his argument as to changed circumstances solely on a change in his own ability to care for the child.[2]

In *McCutchan v. McCutchan,* 5 Or App 96, 98, 483 P2d 93 (1971), we said that a

> "* * * change of circumstances * * * must be quite real if the benefits from a change are to overcome the damage done to a child who is exposed to shifting parental figures. * * *"

We do not believe that the present change in father's circumstances sufficently shifts the balance in his favor. Father's evidence establishes that he is better suited to care for his son than he was at the time of the original custody degree; mother clearly remains equally well suited to care for her son. Granting custody to father on this basis is not justified.

---

[2] Father mentions mother's testimony that she once told him that their son was in danger in Saudia Arabia, but he does not argue that that statement establishes a change in *mother's* circumstances.

Reversed.[3] Costs to appellant.

---

[3] Mother also argues that the trial court erred in denying her motion to hold father in contempt. The question of whether a litigant should be adjudged in contempt of court is within the trial court's discretion, and the court's decision will not be disturbed, absent abuse. *State ex rel Gartzke v. Gartzke,* 16 Or App 157, 159, 517 P2d 1071 (1974). We find no such abuse of discretion here, in light of mother's ambivalence as to whether she would allow son to remain with father.