772 P.2d 353

**Marilyn Chavez NEWHOUSE,
Petitioner–Appellant,**

v.

**Donald A. CHAVEZ,
Respondent–Appellee.**

No. 10469.

Court of Appeals of New Mexico.

Dec. 6, 1988.

Certiorari Denied Feb. 6, 1989.

Donald C. Schutte, Cynthia Jean Trafton, Sorenson & Schutte, P.C., Albuquerque, for petitioner-appellant.

Ken Cullen, Albuquerque, for respondent-appellee.

## OPINION

ALARID, Judge.

A long-standing dispute between the parties over the custody of their two minor children has led to this appeal. Mother,

Marilyn Newhouse, appeals the most recent determination, reached after the trial court heard evidence on her motion to alter father's, Donald Chavez', visitation schedule. The judgment appealed from changes sole custody in mother to joint legal custody in the parties, unless and until mother is able to comply with a parenting plan agreed to by the parties in the spring of 1986; places physical custody with father, with "liberal visitation" in mother; and continues the parenting plan which was approved by court order in April 1986. We reverse and remand for further proceedings.

These proceedings began when mother decided to move from Los Lunas, New Mexico, where both parties resided, to Los Alamos, New Mexico. It is undisputed that the 1986 parenting plan, which was in effect at the time of the decision to move, is impossible to implement with one parent living in Los Lunas and the other in Los Alamos. The effect of the judgment, therefore, is that mother forfeits her right as sole custodian unless she returns to live in the same community as father. Though joint custody is in effect until she does return to live in Los Lunas, mother is limited in her exercise of rights as joint custodian because the judgment requires adherence to the 1986 agreement.

Mother raises two issues on appeal: 1) whether the findings upon which the custody determination depends are supported by substantial evidence, and 2) whether the trial court abused its discretion in drafting a custody arrangement that effectively prohibits her and her family from moving. We consider whether the trial court's custody modification is justified by its findings that mother acted in "bad faith." *See Alfieri v. Alfieri*, 105 N.M. 373, 733 P.2d 4 (Ct.App.1987). We determine those findings are not supported by the evidence and that the remaining findings do not justify prohibiting mother's move. Further, our review reveals that the trial court's findings fail to resolve basic issues material and necessary to a determination that modification of the initial custody agreement to joint custody is in the best interests of the children. *See* NMSA 1978, § 40-4-9.1

(Repl.1986). We therefore remand for reconsideration of those issues. *Jaramillo v. Jaramillo*, 103 N.M. 145, 703 P.2d 922 (Ct. App.1985).

FACTS

The parties were divorced in 1980. By stipulation and agreement, the children of the parties, then ages three and five, were placed in the sole custody of mother and they have been with her since the divorce. Mother remarried and has a third child by that marriage. Since October 1981, father has initiated several unsuccessful proceedings, seeking joint custody of his children. He has obtained gradually-increased visitation rights. The record clearly reflects that father has consistently and steadfastly sought to increase his time and involvement with his children.

In the spring of 1986, the parties agreed to a parenting plan which provided for substantial visitation and increased involvement in decision-making for father. The agreement was provisional in that it would be reviewed and modified if it appeared that the children were "detrimentally affected" by the arrangement.

The plan clearly contemplated the parties would both reside in the general vicinity of Los Lunas. In addition to substantial visitation in father, the plan provides that the children remain in Los Lunas, continue in their schools, attend the same church, and receive medical attention from the same pediatrician. To effectuate the plan, father moved from Edgewood, New Mexico, where he resided at the time of the agreement, to Los Lunas.

The record reveals that neither party was entirely satisfied with the parenting plan. It was not enough for father and proved, by later events, too much for mother. Father sought an increase in visitation in July 1986, asserting that the visitation schedule in the plan was not accomplishing the intended objective of further developing his relationship with his children. In November 1986, when mother advised him she intended to move to Los Alamos with the children, father sought modification of the custody arrangement in the form of a

motion to change the children's principal place of residence to his own. Soon after, mother moved for an alteration in the visitation schedule which would permit her to move to Los Alamos with the children, but continue liberal visitation in father. The trial court refused to rule on the parties' motions without a full hearing on the merits. It denied mother's request for a temporary modification of the April 1986 agreement, pending an evidentiary hearing, though the trial court's docket did not permit such a hearing for almost a year.

Mother moved with her husband and the children to Los Alamos in February 1987. In order to comply with a January 1987 order of the court continuing the April 1986 plan, mother commuted daily with all three children from Los Alamos so the children of the parties could attend school in Los Lunas and maintain the visitation schedule as per the parenting agreement. When this effort proved too stressful for mother, the children, and the family, mother again renewed her request for temporary modification, which was again denied. Thereafter, the children stayed with father in Los Lunas, going to Los Alamos on weekends when arrangements could be made, pending the court's ruling on the parties' motions. Father then filed an amended motion seeking either a change in custody or in the principal place of residence of the parties' children.

The trial court heard evidence on mother's motion for alteration of the provisional visitation agreement. Although the parties did not present evidence on the issues raised by father's motions for change of custody, *see* Section 40–4–9.1, the trial court concluded that physical custody in father and joint legal custody in the parties serves the best interests of the children. We review this custody determination and the findings filed in support.

MOTHER'S RIGHT TO RELOCATE

Mother challenges the trial court's findings that she acted in "bad faith" in deciding to relocate and that the move is contrary to the best interests of the children. If these findings are supported by the evidence, the trial court's custody determina-

tion may be justified. *Garcia v. Garcia*, 81 N.M. 277, 466 P.2d 554 (1970) (custodial parent's right to relocate may be restricted if removal of children would be clearly contrary to their best interests); *Alfieri v. Alfieri* (prohibiting custodial parent's move justified where she acted in bad faith to abrogate non-custodial parent's right to visitation).

Father, whose requested findings and conclusions the trial court adopted, believed that mother's conduct was like that in *Alfieri*, where this court affirmed a similar judgment on the basis of the custodial parent's conduct. *See also Meier v. Davignon*, 105 N.M. 567, 734 P.2d 807 (Ct.App. 1987). In *Alfieri*, we found substantial evidence to support findings that the custodial parent had intentionally and in bad faith sought to abrogate the non-custodial parent's visitation rights and, in doing so, had flouted the authority of the court in custody matters. We affirmed the custody determination, which effectively prevented the custodial parent from removing herself and the child from the state. We find, however, that the evidence below and the circumstances of this case are quite different from *Alfieri* and do not justify prohibiting mother's relocation. *Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977) (where appellate court searches the record and fails to find substantial evidence to support the findings, it will not hesitate to reverse the trial court); *Fitzsimmons v. Fitzsimmons*, 104 N.M. 420, 722 P.2d 671 (Ct.App. 1986) (conclusions must be supported by the findings in order to be sustained on appeal).

█ Courts should not generally determine custody questions so as to sanction a recalcitrant custodial parent to the detriment of the best interests of the child. However, a custodial parent's refusal to cooperate with the non-custodial parent or to follow court orders concerning visitation can be grounds for change of custody in extreme cases. *Lopez v. Lopez*, 97 N.M. 332, 639 P.2d 1186 (1981). We have recognized that parents can forfeit their custodial rights when they have flouted the court's authority over custody questions or

have acted contrary to the interests of the child in his relationship with the non-custodial parent. *E.g., Alfieri v. Alfieri.* Even in the extreme case of failure to cooperate, however, it is the well-being of the child and not the reward or punishment of the parent that must guide the court. *Lopez v. Lopez.* In this case, we find no substantial evidence of such extreme conduct on the part of this mother which would justify either prohibition of her right to relocate or modification to joint custody without further consideration of the best interests of the children.

■ Unlike *Alfieri,* there was no evidence presented to support the trial court's finding that mother decided to move without notifying father or discussing the move with him. The record and the testimony are directly contrary. The trial court did not find, nor is there evidence to support a finding, that mother has attempted to keep father uninformed about the whereabouts of the children or to prevent contact. *Compare Lopez v. Lopez.* We recognize, as father points out, that mother decided to move within a year of their visitation agreement. This fact alone, however, does not establish that mother's decision to move was motivated by a desire to destroy the agreement or to interfere with father's relationship with his children.

Although there is evidence to support the finding that mother's "relocation was one of choice not necessity," the evidence established that Mr. and Mrs. Newhouse exercised that choice in the best interests of their family, including the children of the parties, and for acceptable reasons. There is no dispute that Mr. Newhouse's new employment represents increased income, job security and career potential. *Nelson v. Card,* 162 Colo. 274, 425 P.2d 276 (1967) (acceptance of more rewarding and financially gainful employment recognized as reasonable basis for relocation). Unlike *Alfieri,* there is no finding that mother moved for the purpose of interfering with father's relationship with his children nor was there any evidence presented to support such a finding. Instead, the record and testimony reveal that mother present-ed a liberal visitation schedule to replace the April 1986 schedule. Nor do we find evidence to support the court's finding that mother made her decision to move without considering the effect the move would have on father's relationship with his children or his rights to visitation. The only evidence is to the contrary.

The court also found that mother's "relocation was unilateral without court approval." In *Alfieri,* this court considered facts which established that mother had defied the order which set forth father's visitation rights and specifically mandated each party's compliance with the visitation schedule under threat of contempt. We concluded that "the mother, as custodial parent, could not unilaterally abrogate the father's right to specific visitation * * * without court approval." 105 N.M. at 377, 733 P.2d at 8. Father argues that the April 1986 agreement in this case is like the visitation order the custodial parent defied in *Alfieri* and that this finding justifies the court's determination that mother acted with the same kind of bad faith. The circumstances surrounding mother's move in this case are distinguishable from those in *Alfieri,* and do not compel the same result.

Mother did not remove or seek to remove the children from the court's jurisdiction. *Compare Alfieri v. Alfieri; Garcia v. Garcia.* When the court denied her motion for a temporary modification in visitation, mother did not remove the children from Los Lunas. Although mother did move to Los Alamos in February 1987, she has been prevented by delays in these proceedings and the interim orders of the court from moving the parties' children with her.

Moreover, mother had the right to relocate, *see Alfieri,* and as sole custodian she had "the authority and responsibility to make major decisions in [the children's] best interest," including residence. § 40-4-9.1(L)(2) & (7). We do not agree with father that the April 1986 agreement, though approved by court order, modified mother's rights so as to prohibit her conduct in this case. By that agreement, mother relinquished some rights she had as sole custodian, but she did so with the

understanding that the agreement was provisional in nature and subject to review and modification. The court's order approving the agreement specifically provides that the initial sole custody determination in the divorce decree is not affected. When it appeared that, under changed circumstances, the agreement as written could not be implemented, both parties sought modification of the agreement. Mother's move was indeed unilateral and without court approval, but we find no evidence that mother defied an order of the court in making the move.

In *Garcia*, our supreme court recognized the right of a custodial parent to relocate, except where the move would clearly be contrary to the best interests of the child. In *Alfieri*, this court again recognized that right, except where the custodial parent, intentionally and in bad faith, moves for the purpose of interfering with the non-custodial parent's relationship with the child. In this case, we do not find evidence of such bad faith in mother's conduct. We therefore look to the trial court's best interests determinations to discern whether the evidence and findings establish that mother's relocation was clearly contrary to the best interests of the children. *Garcia v. Garcia*. *See also Jones v. Jones*, 97 N.M. 415, 356 P.2d 231 (1960).

■ The findings and conclusions reflect that the trial court considered the interests of the children within a narrow scope their interests in their relationship with their father and in the continuation of the April 1986 agreement. There is an evidentiary finding that relocation would be "disruptive" to the children. There is no finding with regard to how the children would be affected by accompanying their mother or, in the reverse, how they would be affected by staying with their father in Los Lunas. *See Fitzsimmons v. Fitzsimmons* (requiring a showing of actual effect of custody determination on the children). Though we find evidence to support the findings that mother's move means less time and involvement with father, and renders the April 1986 parenting plan impossible, those findings are not sufficient to support the

judgment. Father's right to visitation is a relevant concern in all cases. However, as a general rule, the non-custodial parent's right to visitation should not prevent the custodial parent from moving when the reasons for the move are legitimate and the best interests of the children will be served by accompanying the custodial parent. *In re Marriage of Meier*, 286 Or. 437, 595 P.2d 474 (1979) (cited with approval in *Alfieri*).

While the trial court is accorded broad discretion in custody matters, the court's ruling must be supported by appropriate findings which, in turn, must be supported by evidence adduced at hearing. *Fitzsimmons v. Fitzsimmons*. *See also Specter v. Specter*, 85 N.M. 112, 509 P.2d 879 (1973). The trial court made no findings addressing the interests of the children in their relationship with mother, their younger sibling or their stepfather, or as to the interdependent relationships within this family, *see* Section 40–4–9.1(B), although there was evidence from which the trial court could have made such findings. Nor are there findings to indicate that the trial court considered the effect of its judgment on these relationships. The undisputed expert testimony was that the welfare of the children is best served by living with their mother. The trial court disregarded this undisputed testimony and made no findings on the issue of whether it would be better for the children to live with their mother or their father. *See Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978) (court may not disregard undisputed relevant testimony on a material issue). *See also Alfieri v. Alfieri* (if interests of child best served by being with parent who is moving, removal should be permitted). Absent such findings, we are not persuaded that the trial court considered the best interests of the children foremost in deciding that mother's relocation was contrary to their interests.

We remand in part for entry of an order consistent with our determination that, under the facts and circumstances of this case and the evidence presented below, mother cannot be deprived of her right, as sole custodian, to move herself and her children.

JOINT CUSTODY

The custody determination in this case does more than prohibit mother's move. It changes the initial sole custody disposition to joint custody "[u]ntil [mother] can reasonably begin compliance with the terms and conditions of the parties' agreement incorporated in [the] Court's Order of April 15, 1986." It is undisputed that the April 1986 plan cannot be implemented unless both parties live in Los Lunas. We have determined that the trial court could not, based on the facts and circumstances, require mother to move back to Los Lunas. We therefore consider whether, under the circumstances as they exist, modification of the initial custody determination to joint legal custody and physical custody in father is supported by the findings. *See Seeley v. Jaramillo*, 104 N.M. 783, 727 P.2d 91 (Ct.App.1986).

The trial court is vested with broad discretion and great flexibility in fashioning a custody arrangement that will serve the best interests of the children. *Edington v. Edington*, 50 N.M. 349, 176 P.2d 915 (1947). The trial court is authorized to "modify and change any order in respect to the * * * care, custody, maintenance or education of the children, whenever circumstances render such change proper." NMSA 1978, § 40-4-7(C) (Repl.1986). On review of modification, however, this court must be satisfied that both parties were before the trial court and had notice and an opportunity to present evidence on the issue of modification. *Garcia v. Garcia. See also Tuttle v. Tuttle*, 66 N.M. 134, 343 P.2d 838 (1959); *Bell v. Odil*, 60 N.M. 404, 292 P.2d 96 (1956). Having considered the record before us and the findings of the trial court, we are not satisfied that the continued validity of the sole custody determination was clearly before the trial court or that the issues raised by modification to joint custody were fully considered. *See Garcia v. Garcia.*

■ In the exercise of its discretion to modify custody determinations, the trial court must resolve basic issues set out in statute and case law. *See, e.g.*, NMSA 1978, § 40-4-9 (Repl.1986) and § 40-4-9.1;

*Seeley v. Jaramillo.* Section 40-4-9.1(A) specifically provides that:

Joint custody shall not be awarded as a substitute for an existing custody arrangement, unless there has been a substantial and material change in circumstances since the entry of the prior custody order or decree, which change affects the welfare of the child, such that joint custody is presently in the best interests of the child.

*See also Schuermann v. Schuermann*, 94 N.M. 81, 607 P.2d 619 (1980). The burden is on the party seeking modification to show such a change in circumstances and that the change overcomes the presumption in favor of the reasonableness of the original decree. *Id.; Edington v. Edington.*

■ Father asserts that mother's relocation is such a change. We noted in *Alfieri* that the custodial parent's moving does not constitute a change of circumstances that will justify a custody change, absent evidence of an "inappropriate goal," as found in that case. 105 N.M. at 379, 733 P.2d at 10. The trial court also recognized a secondary change of circumstance: the inability of the parties to implement their parenting agreement. The trial court also recognized the sacrifices made by father in order to be closer to his children. Father's efforts since the initial custody determination might also be adjudged substantial and material changes in circumstances. A finding of changed circumstances, however, must be coupled with a determination that those changes are such that joint custody, under the circumstances as they presently exist, is in the best interests of the children. § 40-4-9.1(A).

Subsection (A) of Section 40-4-9.1 is only a starting point for determining whether a joint custody order should replace an initial sole custody determination. The statute mandates consideration of a variety of factors in determining whether joint custody is in the best interest of the child, including "the interaction and interrelationship of the child with his parents, his siblings and any other person who may significantly affect the child's best interest." §§ 40-4-9(A)(3) & 40-4-9.1(B). There was

undisputed evidence on this factor, but the findings are devoid of any indication that the trial court considered the interests of the children in their relationships with their mother or the family. *See Sanchez v. Sanchez,* 107 N.M. 159, 754 P.2d 536 (Ct.App. 1988).

There are sound policy reasons for requiring consideration of each of the factors listed in Sections 40–4–9(A) and 40–4–9.1(B), and each is applicable to this case. Though a change in circumstances may have occurred which affects the interests of these children, joint custody may still not be appropriate if the parties cannot agree to a suitable parenting plan for the implementation of joint custody. § 40–4–9.1(B)(6). *Cf. Sanchez v. Sanchez* (parties' willingness and ability to communicate and cooperate with each other is an important aspect of joint custody); *Strosnider v. Strosnider,* 101 N.M. 639, 686 P.2d 981 (Ct.App.1984) (where parties cannot reach agreement or accommodate one another, trial court may determine joint custody not workable). Where, as in this case, there are insufficient grounds to deprive mother of her right to relocate, the trial court must also consider whether joint custody is appropriate, given the "geographic distance between the parents' residences." § 40–4–9.1(B)(7).

If, after the trial court has considered each of the requisite factors, it determines that joint custody is in the best interests of the children, the trial court must then "approve a parenting plan for the implementation of the prospective custody arrangement." § 40–4–9.1(F). The parenting plan must "include a division of [the children's] time and care into periods of responsibility for each parent." *Id.* The judgment here continued the April 1986 plan, which plan cannot accomplish the shared time and responsibility contemplated by Section 40–4–9.1(F) with mother living in Los Alamos and father in Los Lunas.

Further, an award of joint custody, if granted, must comport with the meaning of joint custody and set forth the rights and responsibilities of each parent in the final custody agreement. § 40–4–9.1(J). By re-quiring adherence to the April 1986 agreement, the trial court has made the previous decisions about the children's education, religion, medical care and residence unalterable. If mother cannot enjoy the time with the children which the April 1986 agreement provides, there is no time-sharing plan to replace it. The effects of this judgment are inconsistent with the meaning and intent of joint custody. *See Sanchez v. Sanchez;* § 40–4–9.1(J)(1). *See also* § 40–4–9.1(L)(3) & (6). Neither is "liberal visitation" in either parent, as granted to mother in this judgment, appropriate to a joint custody award. *See* § 40–4–9.1(L)(8).

COSTS

■ Mother challenges the conclusion that father should be awarded his costs in the amount of $3,000.00. There are no findings on the factors necessary to support this award. *See Berry v. Meadows,* 103 N.M. 761, 713 P.2d 1017 (Ct.App.1986). In particular, we find no evidence in the record of the relative ability of the parties to pay for "efficient preparation and presentation of the case." § 40–4–7(A). *See Gilmore v. Gilmore,* 106 N.M. 788, 750 P.2d 1114 (Ct.App.1988); *Sheets v. Sheets,* 106 N.M. 451, 744 P.2d 924 (Ct.App.1987). Father's response is that he should have his costs based on the findings that mother acted in "bad faith." Lacking substantial evidence to support these findings, they cannot support the costs award. Father also urges that mother should be required to pay his costs because he "sought and recovered exactly that which Mother sought to take away from him in the proceedings." As should be clear from the discussion above, we do not view the proceedings in this way. We reverse the costs award on the basis that it is not supported by the findings or the evidence in the record.

SUMMARY

The cause is remanded to the trial court with instructions to set aside the judgment and for further proceedings consistent with this opinion and the best interests and welfare of the children. The April 1986 agreement cannot be implemented under the

**326**

present circumstances and a new visitation schedule should be drafted, preferably by agreement of the parties. If, after reconsideration consistent with this opinion, the trial court determines there has been a substantial and material change of circumstances which justifies modification of the custody arrangement, then a further evidentiary hearing will be necessary to determine whether modification of the initial custody determination will best serve the interests of these children. Further proceedings and determination of the trial court on the custody modification issues must strictly comply with the requirements of Sections 40–4–9 and 40–4–9.1.

Reversed and remanded. The parties shall bear their own attorney fees and costs on appeal.

IT IS SO ORDERED.

BIVINS and FRUMAN, JJ., concur.