639 P.2d 1186

Nancy LOPEZ, Petitioner-Appellant,

v.

Dagoberto LOPEZ, Respondent-Appellee.

No. 13662.

Supreme Court of New Mexico.

Dec. 30, 1981.

Rehearing Denied Jan. 22, 1982.

Conway & Levy, Robert Levy and Maria Garcia Geer, Albuquerque, for petitioner-appellant.

Lanny D. Messersmith, Albuquerque, for respondent-appellee.

## OPINION

RIORDAN, Justice.

Appellant, Nancy Lopez appeals the district court order granting a change in custody of the minor son of the parties to appellee, Dagoberto Lopez, her former husband. The parties were divorced in 1977 at which time custody of their son, Cid, was awarded to the appellant. There have been problems with visitation since the divorce. Less than a year after the divorce, appellant was held in contempt for failure to comply with the visitation rights given to appellee. On February 23, 1979, the parties entered into a stipulation setting forth a specific visitation schedule that would resolve the problems.

On May 29, 1980, the appellee filed a motion for change of custody. He was given temporary custody the same day and permanent custody on March 18, 1981. Appellant raises six issues in this appeal. We affirm.

The issues raised on appeal are whether the trial court abused its discretion:

I. by changing custody when no change in circumstances was shown that affected the welfare of the child.

II. in determining appellant's visitation rights.

III. in not awarding appellant attorney's fees.

IV.  in refusing to appoint a guardian ad litem.

V.  in not ordering appellee's fiancee to undergo a psychological evaluation.

VI.  in denying the motion for rehearing.

### I.  *Change of Circumstance*

Appellant argues that the change in circumstances necessary for a change in custody is not present in this case.  The facts that led up to the motion for the change were as follows.  The appellant had moved to Washington D.C. to take a temporary position.  She left the child with appellee after the parties executed a written agreement, in which appellee agreed to send the child to appellant in two months.  When the time came to send the child to Washington, D.C., appellee refused.  Appellant returned to New Mexico and forcibly removed Cid from the day care center where appellee had placed him and took the child to Washington, D.C.  Later, because of financial difficulties, the appellant sent the child to California to stay with her sister.  After that, Cid was sent to live with the appellant's mother in Albuquerque.  All of this was done without informing the appellee of the child's whereabouts.  When appellee did locate his son, he initiated proceedings to change custody and obtained temporary custody of the child.

■  The transcript shows that the trial court reviewed all factors surrounding each party's relationship with the child in making its decision.  However, the trial court's overriding consideration appeared to be the appellant's lack of cooperation and prior refusal to follow the trial court order concerning visitation.  These factors alone can be grounds for a change of custody in an extreme case.  *See Marriage of Ciganovich,* 61 Cal.App.3d 289, 132 Cal.Rptr. 261 (1976); *Entwistle v. Entwistle,* 61 App.Div.2d 380, 402 N.Y.S.2d 213 (1978).  Both of these cases recognize the modern trend that when the custodial parent intentionally takes action to frustrate or eliminate the visitation rights of the non-custodial parent, a change of custody is an appropriate action.

[I]t is readily apparent that the respondent's very act of preventing the [minor children] * * * from seeing and being with their father is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the mother is unfit to act as custodial parent.

*Id.* 402 N.Y.S.2d at 215–16.

■  The law in New Mexico does not require that in order to change custody the custodial parent must be shown to be unfit.  As we said in *Schuermann v. Schuermann,* 94 N.M. 81, 83, 607 P.2d 619, 621 (1980):

It is argued that before the 'best interests of the child' test can be employed, the court must first find that the morality, character or integrity of the custodial parent has changed since the original award of custody.  We *reject* that argument * * *.  To rely upon any test which causes parents contesting custody to promulgate the negative qualities of each other can only bruise and further disrupt a young child's family relations.  [Emphasis added.]

■  It is a well-established principle that we will not disturb a finding supported by substantial evidence on appeal.  *Fitzgerald v. Fitzgerald,* 70 N.M. 11, 369 P.2d 398 (1962).  We have examined the record and determined that there is substantial evidence to support the trial court's finding that circumstances have changed sufficiently to justify a change in custody.

### II.  *Determining Visitation Rights*

After changing custody, the trial court on its own initiative specified the visitation rights of the appellant.  The visitation rights were almost the same as those formerly enjoyed by appellee.

■  If there is any possibility of visitation problems, the visitation rights in a decree should spell out the times, places and circumstances of visitation.  A decree allowing the non-custodial party the right to visit their children "at reasonable times and places" is too indefinite to be enforced.  If the decree is indefinite it invites a controversy as to the rights and duties of the parents.  24 Am.Jur.2d *Divorce and Separa-*

*tion* § 795 at 903 (1966). The trial court has the power to, and should, specify the visitation rights in a case such as this. The trial court must keep in mind that it is the well-being of the child rather than the reward or punishment of a parent that ought to guide the trial court in determining visitation. *In Re Marriage of McGee*, 613 P.2d 348 (Colo.App.1980).

■ It is incumbent upon the trial court to award a liberal visitation plan in all custody matters to assure the non-custodial parent an ample opportunity to share in the child's growth and to nurture the parent-child relationships with that parent. Only when the proposed visitation interferes with the child's emotional well-being or significantly disrupts the child's day to day environment, should it be limited. Visitation was not limited here; the appellant enjoys the same visitation rights as the appellee previously had.

Given the history of this case, the trial court did not abuse its discretion in specifying visitation.

### III. *Attorney's Fees*

■ The appellant, citing *Schuermann*, contends that the trial court abused its discretion in not awarding attorney's fees to her. In *Schuermann*, we stated:

It is important for trial judges to be liberal in awarding attorney's fees in custody cases where the economic disparity between the parties and the costs involved in pursuing the action are so great that participation becomes economically oppressive to one party. To do otherwise would have a chilling effect upon the less affluent parent's ability to present his or her case and upon the trial judge's ability to determine which parent can provide best for a child's welfare.

*Id.* 94 N.M. at 84, 607 P.2d at 622. After reviewing the financial condition of the parties, we do not feel that the trial court abused its discretion in not awarding attorney's fees. *Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980).

### IV. *Appointment of Guardian Ad Litem*

After the trial court decided this case, appellant moved for a rehearing and filed a number of motions, including a motion to appoint a guardian ad litem for the minor child of the parties. Section 40–4–8, N.M.S. A.1978, reads:

In any proceeding for the dissolution of marriage or disposition of children, where custody of minor children is contested by both spouses, the court *may* appoint an attorney at law as guardian ad litem on the court's motion or upon application of either party to appear for and represent the minor children * * *. [Emphasis added.]

■ This statute clearly makes it discretionary with the court as to whether such appointment of a guardian ad litem should be made. The following language by the Kansas Supreme Court expresses our view.

Perhaps in a given case, and under peculiar and unusual circumstances, it would be proper to appoint a guardian ad litem to represent a minor child at a custody hearing, but there is nothing in the case before us to indicate the court erred in not following such procedure.

*Heilman v. Heilman*, 181 Kan. 467, 470, 312 P.2d 622, 624 (1957). In addition, since the request was not made until after the trial court had reached its decision, it was not an abuse of discretion to deny the motion.

### V. *Psychological Examination*

Appellant alleges that the trial court abused its discretion in refusing to order a psychological examination of the appellee's fiancee, who was not a party to the proceeding.

■ New Mexico Civil Procedure Rule 35(a), N.M.S.A.1978 (Repl.1980), allows for the court to order a mental examination

[w]hen the mental * * * condition * * * of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit to a * * * mental examination * * *. [Emphasis added.]

However, the appellee's fiancee was not a party to the proceeding, nor was she a person in the custody or under the legal

control of a party. Therefore, the trial judge did not err in refusing to order a psychological examination of the appellee's fiancee.

### VI. *Motion for Rehearing*

After the trial court sent a letter decision to opposing counsel, appellant filed a motion for rehearing. Appellant claims that she should have been allowed to offer additional evidence after she learned that the trial court had decided to change custody. She also claims that the matters of the guardian ad litem and further mental examinations needed clarification. However, the guardian ad litem and mental examination matters were raised by motion and disposed of by the trial court. The only additional ground for a new trial was the testimony of a psychiatrist that serious psychological harm could result from removing a minor child from a primary caretaker, and that any such move should be made only after psychological testing was done of the child and all parties. After reviewing the record, we feel the trial court adequately considered these factors and did order an evaluation by a court appointed psychologist in order to have the benefit of his views. The motion raised no new facts relevant to the issues before the trial court. A denial of a motion for a new trial is not an abuse of discretion when the motion raises no material issue of fact which was not fully covered by the testimony and evidence. *Trinidad Industrial Bank v. Romero*, 81 N.M. 291, 466 P.2d 568 (1970). The granting of a new trial lies within the trial court's discretion and will not be reviewed by us unless there is an abuse of that discretion. *Id.*

### VII. *Conclusion*

We have held that the trial court has wide discretion in granting a change in custody and that the welfare of the minor child is the controlling factor. *Cole v. Adler*, 82 N.M. 599, 485 P.2d 355 (1971). Indeed, in *Schuermann v. Schuermann, supra*, we stated that the trial court's primary concern *must* be for the child's best interest. We specifically overruled prior opinions of this Court, including *Matter of Briggs*, 91 N.M. 84, 570 P.2d 915 (1977), in which the appellant relied on a required finding that the morality, character, or integrity of the custodial parent must have changed before a change in custody is appropriate. We pointed out that custody disputes need not be directed towards the negative qualities of the parties or the care that they provide the minor children. That is not to say that the trial court should not listen to the evidence of negative factors, but we should not encourage a system that has relied too often on those factors in the past in determining custody.

We have reviewed the entire transcript in this matter and find no abuse of discretion by the trial court. Absent that abuse, the court's findings will not be reversed on appeal. *Matter of Valdez*, 88 N.M. 338, 540 P.2d 818 (1975).

EASLEY, C. J., and PAYNE, J., concur.