676 P.2d 1338

**Deborah HESTER, Petitioner-Appellee,**

v.

**Norman Leon HESTER, Respondent-Appellant.**

**No. 7359.**

Court of Appeals of New Mexico.

Jan. 10, 1984.

Certiorari Denied Feb. 21, 1984.

Steven L. Tucker, Charles A. Purdy, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for respondent-appellant.

Gail Gottlieb, Sutin, Thayer & Browne, Albuquerque, for petitioner-appellee.

## OPINION

BIVINS, Judge.

Norman Leon Hester appeals an order of the District Court of Santa Fe County in which it declined to exercise its jurisdiction to change the custody of the parties' eight-year-old daughter. Custody had been awarded to the mother, Deborah Hester, in a decree entered by the same court in 1979. Some time after the divorce the mother and child moved to Colorado. While the child was visiting the father at his home in New Mexico in June 1982, he filed in this State for change of custody and temporary custody pending final hearing. After conducting a full hearing, at least as to the father's proof, the trial court held it had subject matter jurisdiction under NMSA 1978, § 40-10-4 (Repl.Pamp.1983) of the Child Custody Jurisdiction Act (CCJA), but declined jurisdiction pursuant to NMSA 1978, § 40-10-8 (Repl.Pamp.1983), finding that New Mexico was not a convenient forum.

The father raises two issues. First, he claims that since the trial court failed to make necessary findings until after entry of the order, the order cannot stand. Second, assuming the court's findings are properly before this Court, the father contends that substantial evidence does not exist to support a finding that New Mexico is not a convenient forum. In her brief the mother raises procedural defects in the father's appeal, and asks for attorney fees on appeal. We hold that the trial court did not abuse its discretion in declining to exercise its jurisdiction. We also award the wife attorney fees.

## 1. Preliminary questions.

■ (a) Relying primarily on *Davis v. Westland Development Company*, 81 N.M. 296, 466 P.2d 862 (1970), the father argues that upon the filing of the notice of appeal the trial court lost jurisdiction and could not later make findings of fact or conclusions of law. He contends we must disregard the trial court's findings. While we have no quarrel with the general rule relied on by the father, the situation here is akin to *Brown v. Hayes*, 69 N.M. 24, 363 P.2d 632 (1961), in which the Supreme Court held that where the trial court's tardy findings become part of the record, the useless act of remanding the case for the trial court to make the same findings over again would accomplish nothing and only cause delay. Both parties have addressed the findings as if their filing occurred before the appeal was taken. We therefore consider the findings and conclusions of the trial court.

(b) The mother urges dismissal of the father's appeal because the brief-in-chief was not timely filed and the docketing statement failed to include in the statement of facts that the parties' child currently resides in Colorado.

■ While the mother is technically correct that the father's brief was two days late, we disregard the violation here. It is the appellate court policy to construe rules

liberally so that an appeal may be decided on the merits whenever possible. *Jaritas Livestock Co. v. Spriggs*, 42 N.M. 14, 74 P.2d 722 (1937); *Olguin v. State*, 90 N.M. 303, 563 P.2d 97 (1977). The wife alleges no prejudice and we find none.

As to the docketing statement, for the same reasons, we hold it sufficient to raise the issue on appeal.

Therefore, we proceed to consider the merits of the appeal.

## 2. Forum non conveniens.

■ The father first contends that no substantial evidence supports the trial court's finding that New Mexico is not a convenient forum. Specifically, he challenges the following findings:

> 7. Much of the necessary evidence concerning the child's present and future care, protection, training and personal relationships is available only in Colorado.
>
> 9. The child has a closer connection with the state of Colorado than with the state of New Mexico.
>
> 10. It is in the best interest of the child that the Colorado courts assume jurisdiction.

In considering whether the findings are supported by the evidence, this Court considers the evidence and reasonable inferences drawn therefrom in the light most favorable to the trial court's findings. *Tapia v. Panhandle Steel Erectors Company*, 78 N.M. 86, 428 P.2d 625 (1967).

■ Finding number seven is supported by the evidence that Colorado is the "home state" of the child, see definition, NMSA 1978, § 40-10-3(E) (Repl.Pamp.1983), and has been since April, 1982. Further, Colorado is the locale of the child's school, church, physicians and dentist. The record reflects that the child spent over 80% of the past year in Colorado. These same facts support the finding that the child has a closer connection with Colorado. In addition, the evidence indicates that the child's custodial parent resides in Colorado and that the child has relatives and friends there.

■ Likewise, finding number ten that it is in the child's best interests for the Colorado courts to assume jurisdiction is supported by substantial evidence. The father attempted to show that the child was having difficulty adjusting to the recent marriage of her mother and that this was causing emotional problems; witnesses in Colorado, including the mother's new husband, teachers, people from their church, Brownie leaders and doctors, can discuss the child's behavior.

■ The fact that the child has lived in New Mexico most of her life and has more relatives here than in Colorado cannot be either disputed or ignored. While we agree evidence supports substantial contacts with the State of New Mexico, that would not make Colorado the less appropriate forum. Admittedly, the evidence here was close, but we will not weigh the evidence or substitute our judgment for that of the trial court as long as the findings are supported by substantial evidence. *Getz v. Equitable Life Assur. Soc. of U.S.*, 90 N.M. 195, 561 P.2d 468 (1977). We will not disturb the trial court's findings absent an abuse of discretion.

The father recognizes that abuse of discretion is the test and that he bears a heavy burden in challenging the exercise of that discretion. He is correct. Although *McLam v. McLam*, 85 N.M. 196, 510 P.2d 914 (1973), did not take into account the CCJA, we nonetheless adopt the approach it sets forth: "The application of the doctrine of forum non conveniens rests largely in the discretion of the court to which the claimant resorts." *Id.* at 198, 510 P.2d 914. For an excellent definition of the terms "judicial discretion" and "abuse of discretion," see *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970).

The father also argues that declining jurisdiction in this case does nothing to further the purposes of the CCJA, and in fact contravenes those purposes, citing NMSA 1978, § 40-10-2 (Repl.Pamp.1983). We disagree.

■■ In order to determine whether it is an inconvenient forum under Section 40–10–8(C), the trial court shall consider, among other things, whether the exercise of jurisdiction by a New Mexico court would contravene *any* of the purposes stated in Section 40–10–2 of the CCJA. The trial court found that its exercise of jurisdiction would encourage continuing controversies over the custody of the child and would prevent litigation concerning custody of the child from occurring in the state which has the closest connection with the child and which has much of the necessary evidence concerning the child's care, protection, training and personal relationships. This finding covers at least two of the purposes of the CCJA. *See* § 40–10–2(C) and (D).

The father argues not only that it is unfair to force him to relitigate custody in Colorado after a plenary hearing in New Mexico, but also that the declination of jurisdiction where the original custody determination took place fosters frivolous custody actions.

■■■ We agree that a determination of jurisdiction under the CCJA should ordinarily be made as a preliminary matter and before conducting a hearing on the merits, but hold that under the circumstances here a later decision was justified. The father filed his petition to change custody on June 22, 1983, and on the same day secured an order giving him temporary custody of the child. The mother answered on July 1, and asserted lack of jurisdiction under the CCJA. The trial court expedited the matter by holding a hearing on July 7. Neither side offered affidavits or other evidence that would have enabled the trial court to rule on the jurisdictional question before the hearing. The trial court necessarily had to rely on testimony at the hearing. In doing so it withheld any ruling until it had heard all the proof. In order to avoid duplication of proceedings, the party asserting lack of jurisdiction should in most instances invoke a ruling at the earliest possible date, thereby avoiding the cost, expense and traumatizing effect of a hearing on the merits in the event jurisdiction is declined.

■ As to the father's argument that the declination of jurisdiction fosters frivolous actions, NMSA 1978, § 40–10–15 (Repl.Pamp.1983), which gives the original court in the case jurisdiction, must be read in conjunction with Section 40–10–8, which gives the original court the discretion to decline jurisdiction. When so read, the refusal to exercise jurisdiction here will not foster frivolous custody actions. The father can pursue this matter before the Colorado courts.

■ When the laws of New Mexico relating to modification of child custody are compared with those of Colorado, it is not difficult to see why the father wishes to maintain his action in this State. The Supreme Court of New Mexico in *Schuermann v. Schuermann,* 94 N.M. 81, 607 P.2d 619 (1980), adopted the standard by which change of circumstances should be measured. Under *Schuermann* the factors considered in determining modification of a custody order become essentially the same as those applied in making the initial custody determination. The Court recognized only one additional factor: "any negative impact on children caused by a custody change." *Id.* at 83, 607 P.2d 619. In *Lopez v. Lopez,* 97 N.M. 332, 639 P.2d 1186 (1981), the Supreme Court cites *Schuermann* with approval and, additionally, holds that "[W]hen the custodial parent intentionally takes action to frustrate or eliminate the visitation rights of the noncustodial parent, a change of custody is an appropriate action." *Id.* at 334, 639 P.2d 1186.

In sharp contrast, Colorado's approach seeks to stabilize the child's environment without jeopardizing his or her best interests. The Colorado Uniform Dissolution of Marriage Act provides:

**Modification.** (1) If a motion for modification has been filed, whether or not it was granted, no subsequent motion may be filed within two years after disposition of the prior motion unless the court decides, on the basis of affidavits, that there is reason to believe that the child's present environment may endanger his

physical health or significantly impair his emotional development.

(2) The court shall not modify a prior custody decree unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:

(a) The custodian agrees to the modification;

(b) The child has been integrated into the family of the petitioner with the consent of the custodian; or

(c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child. Colo.Rev.Stat. § 14–10–131 (1973); see also Christian v. Randall, 33 Colo.App. 129, 516 P.2d 132 (1973).

The obvious purpose of Colorado's law is to assure stability and continuity. See Commissioners' Note, Unif. Marriage and Divorce Act, § 409, 9A U.L.A. 212 (1979).[1] As noted by one commentator:

Any psychiatrist or psychologist, experienced parent, grandparent, or teacher will state that when there has already been one upheaval in the child's life due to divorce or some other misfortune, the first and foremost requirement for the child's health and proper growth is stability, security, and continuity. Dr. Andrew Watson, psychiatrist and professor of law, has said that stability is "practically the principal element in raising children, especially pre-puberty ones," and that "a child can handle almost anything better than he can handle instability."

Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.Rev. 1207 (1969).

Neither Schuermann nor Lopez involved the Child Custody Jurisdiction Act which did not take effect until July 1, 1981. Whether the legislature in adopting the CCJA intended that the courts apply a standard which creates greater uniformity with other jurisdictions, we need not decide. See generally State ex rel. Valles v. Brown, 97 N.M. 327, 639 P.2d 1181 (1981). That issue has not been raised in this appeal and its resolution will have to await a proper case.

In passing, we note that the CCJA has among its purposes making the laws of New Mexico uniform with the laws of other states which enact similar laws, discouraging continuing controversies over child custody and avoiding jurisdictional competition and conflict with courts of other states. Section 40–10–2. Forty-seven states and the District of Columbia have adopted the Uniform Child Custody Jurisdiction Act. Am.Jur.2d Desk Book 390 (1979). Our research does not indicate that any of these states have similar laws which permit de novo reassessment of child custody each time the non-custodial parent petitions the court.

Based on the thin evidence before the trial court, it is clear that the father would not be able to satisfy the requirements for modifying custody under Colorado law; however, if he wishes to pursue the matter, that is the jurisdiction where he must assert his claim.

We hold that the trial court, in declining jurisdiction in favor of the Colorado courts, did not abuse its discretion. See Bosse v. Superior Court for Cty. of Santa Clara, 89 Cal.App.3d 440, 152 Cal.Rptr. 665 (1979). Buckner v. Buckner, 95 N.M. 337, 622 P.2d 242 (1981), does not require a different result. In that case the Supreme Court said that unless the balance is strongly in favor of the foreign forum, the plaintiff's choice of forum should not be disturbed. Buckner did not involve the CCJA.

### 3. Attorney fees.

The mother testified that she incurred approximately $3,000 in attorney fees, trav-

---

1. Colorado's statute is a form of the Uniform Marriage and Divorce Act.

el expenses and expert fees to the date of the hearing. The trial court, apparently relying on Section 40–10–8(G), awarded her $250 attorney fees. In doing so the court noted that this was a "token" award. Since New Mexico could not be found a *clearly* inappropriate forum, we cannot criticize the small amount. *See* § 40–10–8(G). The mother does not appeal the inadequacy of that award. What she asks is attorney fees on appeal.

NMSA 1978, Section 40–4–7(A) (Repl. Pamp.1983) authorizes the court to make an order relative to the expenses of the proceedings that will insure an efficient preparation and presentation of the case. That section applies to costs and fees incurred on appeal. *Miller v. Miller*, 96 N.M. 497, 632 P.2d 732 (1981).

We do not have a clear case of economic disparity as existed in *Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980). The mother here earns $17,000 annually and the father's income ranges between $22,000 and $24,000. Nevertheless, we observe that following her move to Colorado and in order to comply as nearly as possible with a visitation agreement, the mother bore the lion's share of travel expenses for the child to come to New Mexico to see her father. He paid for only one trip. We also note that while initially New Mexico may not have been a clearly inappropriate forum, once the trial court ruled it inappropriate, Section 40–10–8(G) provides a stronger basis for making an award on appeal.

Accordingly, we award the mother $2,500 attorney fees.

### 4. Conclusion.

The order declining jurisdiction is affirmed. The mother is awarded $2,500 attorney fees on appeal, with the amount to be paid to the clerk of this Court for remittance to the mother. The father shall bear the cost of appeal.

IT IS SO ORDERED.

WALTERS and NEAL, JJ., concur.