722 P.2d 671

**Thomas FITZSIMMONS, Petitioner-Appellee,**

v.

**Nancy FITZSIMMONS, Respondent-Appellant.**

**No. 8199.**

Court of Appeals of New Mexico.

March 18, 1986.

Certiorari Denied July 23, 1986.

Eugene E. Klecan, Janet Santillanes, Klecan & Santillanes, P.A., Albuquerque, for petitioner-appellee.

Laura J. Mason, Atkinson & Kelsey, P.A., Albuquerque, for respondent-appellant.

## OPINION

GARCIA, Judge.

This is an appeal from the trial court's grant of custody of the parties' two children to husband. The case was initiated when husband filed a complaint for divorce alleging abandonment. He contended that his wife was not a fit and proper person to have custody of the parties' minor children and sought an award of custody. Wife filed a response and counter-petition seeking a dissolution of marriage on the grounds of incompatibility. Wife also sought custody of the children. Husband failed to reply to his wife's answer and counter-petition.

The trial court held two hearings on the complaint and counter-petition. The first hearing was held on February 28 and 29 of 1984. This resulted in an oral order granting a divorce, dividing the community assets and liabilities, denying alimony and attorney fees to wife and awarding wife child support. The court granted joint legal custody to the parties and directed that the physical custody would be shared on an alternating two-week schedule. The court did not grant the dissolution of marriage on the grounds urged by husband, but rather on the grounds of incompatibility, and stated that the divorce would be entered as of the date of the hearing. Additionally, the court directed a six-month re-

view of the custodial arrangement. No written judgment, decree or order was entered.

The trial court conducted a second hearing in September. At the conclusion of this hearing, the court found and concluded that the best interests of the children would be served by granting custody to husband. The court's findings and conclusions were incorporated in a judgment filed on October 31, 1984. This is the final order from which wife appeals.

■ At the outset, we are compelled to note that husband's approach to this case has created a bitter and acrimonious atmosphere in which the welfare of the children took second place to husband's efforts to condemn and punish wife. Husband sought to portray his wife as an immoral, "ungrateful" person whose punishment for leaving him to pursue her career, another man and Albuquerque's "fast life" should be the loss of her children. This reciminatory approach has been specifically condemned by the New Mexico Supreme Court. *Lopez v. Lopez,* 97 N.M. 332, 639 P.2d 1186 (1981) (it is the well-being of the child and not the reward or punishment of the parent that guides the court); *Schuermann v. Schuermann,* 94 N.M. 81, 607 P.2d 619 (1980) (we should not encourage a system that relies on a showing of the negative qualities of the parent in custody disputes). We again take the opportunity to point out that such litigation tactics are inappropriate, and should not be utilized.

## CUSTODIAL STANDARDS AND THE COURT'S DISCRETION

The legislature has determined that the "best interests of the child" shall be the standard for the trial court, "[i]n any case * * * awarding the custody of a minor * * *." NMSA 1978, Section 40–4–9 (Repl. Pamp.1983). The factors to be considered in the determination of the child's best interests are the wishes of the child's parents, the wishes of the child, the interaction and interrelationship of the child with his parents, siblings and other significant persons, the child's adjustments to home, school and community and the mental and physical health of all the individuals involved. § 40–4–9.

■ Trial courts are vested with wide discretion in custody determinations and the trial court's decision will not be overturned absent an abuse of discretion. *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980); *Kotrola v. Kotrola,* 79 N.M. 258, 442 P.2d 570 (1968) (no reversal unless the trial court's conclusion about the best interests of the children is a manifest abuse of discretion under the evidence).

■ While the trial court is accorded great leeway in custodial decisions, the court's ruling must be supported by appropriate findings and the court's findings must be supported by the evidence adduced at the hearing. *See Specter v. Specter,* 85 N.M. 112, 509 P.2d 879 (1973); *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 654 P.2d 548 (1982). Similarly, the lower court's conclusions of law must find support in the court's findings in order to be sustained on appeal. *Romero v. J.W. Jones Construction Co.,* 98 N.M. 658, 651 P.2d 1302 (Ct. App.1982). Before turning to the court's findings and conclusions to determine whether they are supported by the record in this case, we briefly consider wife's change of circumstances argument.

## CHANGE OF CIRCUMSTANCES

■ In addition to the best interest standard, in a proceeding to modify a provision of custody, the court must find that circumstances have so changed as to justify a modification. *Schuermann.* We must consider whether wife's claim that the trial court was required to find "changed circumstances" to award sole custody to husband is appropriate, under the facts of this case.

■ The September hearing was a custody review hearing scheduled by the judge when he awarded joint custody as a six-month experiment. The earlier hearing culminated in an oral ruling from the bench at which time the court determined that "both parents are good people capable of having custody of the children." The judge stated that he was granting the di-

vorce and awarding joint custody as of that day, but no judgment or order was in fact entered. Because no order, judgment or decree was entered, the oral remarks of the trial court cannot be considered final. *Stone v. Stone*, 79 N.M. 351, 443 P.2d 741 (1968). In custody modification cases, the inquiry concerns the circumstances, of a material nature, that have changed since the entry of the original decree. *Davis v. Davis*, 83 N.M. 787, 498 P.2d 674 (1972). The "change of circumstances" time frame is measured from the original decree. *Kerley v. Kerley*, 69 N.M. 291, 366 P.2d 141 (1961). There is a presumption of reasonableness in the original decree, and that presumption serves to avoid re-litigating adjudicated issues. *Id.* The "change of circumstances" standard traditionally used for modification of final orders is not applicable in this case because a final order was not entered until October 1984. A change in circumstances was not necessary to modify the court's joint custody award in this case. Rather, the court was required to consider the standards for custody of Section 40–4–9 and to comply with the requirements of NMSA 1978, Civ.P.R. 52(B) (Repl. Pamp.1980).

## WHETHER THE COURT ERRED IN CONSIDERING NON–STATUTORY FACTORS

 Wife contends that the trial court abused its discretion by considering improper factors in its determination of custody, and further, that non-statutory factors were weighed too heavily. Section 40–4–9 contemplates that in addition to the explicit factors set out in the statute, the trial court, in determining the child's best interest, should consider other "relevant factors." Great discretion is accorded the trial court in custody matters, and this discretion, together with the statutory authorization, allows the court to examine all the facts and circumstances surrounding a child's living situation. Similarly, New Mexico law does not mandate that the court give greater or lesser weight to any specific factor. That is a matter reserved to the trial court's discretion. It is the trial judge who hears all the evidence, who observes the demeanor of the parties and their witnesses and who is in the best position to exercise his sound judgment. *Ridgway.* While a court is afforded wide discretion in determining custody, such discretion is not unfettered. It "is not arbitrary, vague or fanciful, or controlled by humor or caprice, but is a discretion governed by principle and regular procedure for the accomplishment of the ends of right and justice." *Urzua v. Urzua*, 67 N.M. 304, 308, 355 P.2d 123 (1960).

 Additional findings made by the trial court, pertinent to its custodial determination, were that wife left the family home in Grants, and is pursuing a career in architecture (Findings No. 2 & 7); that husband was a fit and proper person to have custody of the children (Finding No. 12); that wife uses child-care facilities while the children are in her custody (Finding No. 3). The court did not make any finding regarding husband's work situation. Implicit in these findings is the determination that wife's decision to pursue her education and career in Albuquerque makes her less capable or less fit to be a custodial parent. A mother's employment should not be accorded a different or negative effect when compared with a father's employment. "The working mother is a common and often necessary phenomenon in our society, and need not reflect on the adequacy of the mother's parenting ability." *Greene v. French*, 97 N.M. 493, 496, 641 P.2d 524 (Ct.App.1982). On the contrary, the trend in New Mexico case law is towards encouraging a divorced spouse to gain economic autonomy so as to extricate herself or himself from a position of dependency. *See Lovato v. Lovato*, 98 N.M. 11, 644 P.2d 525 (1982). The implication that wife, because of her employment, is less able to manage or less deserving of custody is not in accord with the national trend. *Id.*

 We acknowledge that wife is required to utilize the services of babysitters and day-care centers while husband is able

to rely on his own parents to care for the children during their periods in Grants. The availability of such loving grandparents is certainly a plus factor which the court can appropriately consider. However, the absence of maternal grandparents in Albuquerque and the corresponding need to utilize paid child-care arrangements, will not serve to deprive an otherwise good parent of shared physical custody.

Upon examination of the "non-statutory factors" complained of by wife, we determine that insofar as the trial court based its custody award on Findings No. 2, 3 and 7, the custody award is not supported by the court's findings or by any substantial evidence before the court.

## WHETHER THE COURT ERRED IN DETERMINING THAT WIFE CONSULTED A PSYCHOLOGIST FOR PURPOSES OF FRUSTRATING THE TEMPORARY JOINT CUSTODY ORDER

6. That Nancy Fitzsimmons, contrary to the order of this Court given on February 29, 1984, consulted a psychologist, Dr. Harold Paine, for the purposes of frustrating the joint custody decree of this Court and failed to give information to anybody for an extended period of time of this visitation.

Wife's consultation with a child psychologist was interpreted by the trial court, in its Finding No. 6, as an attempt to frustrate the court's joint custody decree. An examination of the evidence and the reasonable inferences therefrom points to the conclusion that the trial court erred in its Finding No. 6.

At the close of the February hearing, the court directed the parties to share physical custody of their children on an alternating two-week basis. Implicit in the court's determination was the understanding that the parties would cooperate with one another in carrying out the court's order. *Strosnider v. Strosnider*, 101 N.M. 639, 686 P.2d 981 (Ct.App.1984). The court made no ruling concerning consultations with psychologists. At trial, evidence presented as to wife's visits to Dr. Paine, the psychologist, indicated: that wife consulted Dr. Paine because of her concern over the children's new living arrangements (two weeks in Albuquerque, two weeks in Grants); that wife consulted Dr. Paine to understand how the change would affect the children and what she should be looking for in terms of the new situation; that while wife did not immediately tell husband of her visits, when wife began noticing adjustment problems with Margaret, she did encourage husband to speak with Dr. Paine. Husband testified that he eventually saw Dr. Paine out of concern for the children. Testimony presented to the trial court indicated that after the second visit, Dr. Paine, not wife, suggested that a revised custody arrangement might be negotiated, and the parties did negotiate such an agreement which later fell by the wayside.

■■■■ Husband's "evidence" in this matter consists largely of inferences based on innuendo. We do not weigh the evidence nor pass on the credibility of witnesses when the evidence substantially supports a finding of the trial court. *Blumenthal v. Concrete Constructors, Co. of Albuquerque, Inc.*, 102 N.M. 125, 692 P.2d 50 (Ct.App.1984). Yet, husband's attempt to parlay the proximity of the February hearing and the first psychologist visit, wife's dissatisfaction with joint custody, wife's failure to immediately disclose the visits to husband and the attempt to reach a new custody arrangement by *both* parties, into substantial evidence for Finding No. 6 does not succeed and should have been rejected by the trial court. *See In Re Briggs*, 91 N.M. 84, 570 P.2d 915 (1977).

The evidence of wife's complete cooperation with the court's order dictating the terms of physical custody is undisputed. Wife always made the children available to husband or the grandparents and willingly retained custody of the children when husband's parents were unable to care for the children during husband's two-week custody periods.

This is not a case where one parent has attempted to totally usurp the other parent's custodial role. *See e.g., Lopez v. Lopez.* Even allowing the validity of hus-

band's complaint that he should have been informed when the children were first observed by Dr. Paine, wife's actions do not add up to an attempt to frustrate the court's joint custody decision. The trial court's Finding No. 6 is not supported by substantial evidence and thus, cannot serve as a basis for the court's award of sole custody to husband. *Watson Land Co. v. Lucero*, 85 N.M. 776, 517 P.2d 1302 (1974).

**WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING AND CONCLUDING THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO AWARD CUSTODY TO HUSBAND**

 Wife argues that the trial court's findings are not supported by evidence and that the findings do not support the conclusion. In its second conclusion of law, the court stated: "[T]he children should not live with her, and their education and upbringing is endangered by so doing." We agree with wife's contention that neither the evidence nor the findings support this conclusion. While there is evidence to show that husband's view of wife's lifestyle, i.e., pursuit of higher education and a career, was not in line with his view of a wife's "traditional role," there is no evidence to show that her actions had a detrimental effect on the children. Nor do any of the court's findings support this conclusion. It is important to note that in the earlier February hearing, the court stated that wife was a "good" person, "capable of having custody of the children." In September, the trial court concluded that the children were endangered by living with her. Husband does not direct our attention to any evidence to support this conclusion, and indeed, a review of the record confirms that there is none. *See Boone v. Boone*, 90 N.M. 466, 565 P.2d 337 (1977) ("We recognize that a trial court is vested with broad discretion in awarding the custody of minor children, but we cannot ignore the complete lack of evidence to support the court's findings in this case.")

Husband would base the trial court's conclusion on Finding No. 4: "That Nancy Fitzsimmons is admittedly cohabitating [sic] with Don Felts, who also has a thirteen-year-old daughter who lives with them."

This finding was tendered by husband. Husband represented to the trial court, and to this court, that wife admitted cohabiting with Don Felts. This supposed admission, however, does not appear in the record. On the contrary, both wife and Don Felts denied cohabiting with one another. Wife testified that while she and Felts were often together Felts did not live with her, and that much of the time they did spend together, was with the children. Wife maintained her own residence, and Felts maintained his own. He did not support her, nor did he keep clothing at her residence. He would often go to her home in the morning and assist her with the feeding and clothing of the children. Prior to the second hearing, both she and Felts told the psychologist, who was seeing the children, that they were not living together. No witness was presented to show that they lived together as husband and wife. While the evidence shows that she and Felts had a close, personal and sexually intimate relationship, there was no cohabitation as defined by law. Sexual intimacy alone does not constitute cohabitation. *In re: Estate of Bivians*, 98 N.M. 722, 652 P.2d 744 (Ct.App.1982).

 The court's finding of unlawful cohabitation takes on added significance in that it was a factor that weighed heavily in the court's custodial determination. The trial court noted that unlawful cohabitation is contrary to public policy. We do not disagree. Yet, we are compelled to note that engaging in a non-marital sexual relationship is generally not, standing alone, grounds for a change of custody. *McDonald v. McDonald*, 94 A.D.2d 856, 463 N.Y.S.2d 598 (1983); *Smith v. Smith*, 307 Pa.Super. 544, 453 A.2d 1020 (1982) ("Of course, evidence of this non-marital relationship is not sufficient to deny appellee custody of her daughter. No negative effect of that relationship * * * was established * * *.") *Id.* at 1026 n. 7. In *Man-*

ley v. Manley, 389 So.2d 454 (La.App.1980) (En Banc), the appellate court found that the trial court abused its discretion in removing a small child from the custody and care of her mother when there was no proof that the mother was providing an unwholesome atmosphere for the child, or that the child was exposed to an immoral relationship. The appellate court noted that the mother had cared for the child continuously from birth and that there was no evidence of neglect. The court emphasized the absence of evidence that the relationship was in any way detrimental to the child. Courts may generally consider a parent's non-marital relationship as a factor in its custody determination. Nonetheless, the same standard, the welfare of the child, prevails. *Hester v. Hester,* 100 N.M. 773, 676 P.2d 1338 (Ct.App.1984).

■■■ We have determined that the facts do not support a finding of unlawful cohabitation. Even if there was unlawful cohabitation, however, the record is devoid of evidence that would allow us to conclude that there was a negative effect on the children or that such a relationship had provided an unwholesome atmosphere for the children of the parties.

The trial court found that the children's physical and moral upbringing was enhanced by their remaining in Grants. The finding is drawn from essentially two sources: counsel's characterization of wife, and evidence of physical danger to the children in Albuquerque.

■■■ Husband's attorney castigated wife for her "immoral" and "detrimental" relationship, but counsel's beliefs and statements cannot be considered as evidence. *See State v. Herrera,* 84 N.M. 46, 499 P.2d 364 (Ct.App.1972). Neither lay nor expert testimony supported husband's argument of adverse effect. The court's unsupported finding cannot serve as a foundation for a conclusion of law. *See Greene v. French.*

■■■ As part of his claim that the children were in physical danger, husband presented evidence that while the parties' children were visiting their paternal grand-parents in Grants, and Felts and his daughter were at wife's Albuquerque residence, an assailant had broken into wife's home and sought to molest Felts' daughter. Husband attempted to use this incident as "evidence" that living in Albuquerque was dangerous and that the parties' children were at risk if they lived with wife in Albuquerque. The logic of the argument is faulty. A person, through no fault of his own, can be a crime victim in any American community. Nothing in Felts' conduct or lifestyle made him or his family a more likely target of assault. Similarly, nothing in wife's conduct made her a more likely crime victim. To accept husband's argument would require us to find that living in Albuquerque is inherently dangerous, and custody should never be awarded to a parent residing there. To state the proposition is to expose its fallacy.

We presume the court's findings were based on the wife's departure from the accepted view of morality. Wife had engaged in a sexual relationship with a man not her husband, and sexual intimacy outside of marriage is generally not considered acceptable conduct. We do not seek to depart from this appropriate and sound view of societal and human relations; yet, we must still search the record to see if there is evidence that the wife's relationship with Mr. Felts had any negative impact on the children. In *Ettinger v. Ettinger,* 72 N.M. 300, 383 P.2d 261 (1963), the court, while recognizing that all the relevant circumstances should be considered by the trial court in determining custody, quoted with approval a statement from an Oregon case, " '[N]ot every act of indiscretion or immorality should deprive a mother of the custody of her children.' " *Id.* at 304, 383 P.2d 261. The court asserted that the controlling influence in determining a custody award must be the best interest of the child. In *Schuermann v. Schuermann,* the court, while upholding the "morality, character, or integrity" standard for determining the capacity of the custodial parent, warned that the trial court's exercise of discretion must be consistent with the evidence. In · *Boone v.*

*Boone,* the trial court granted a change of custody from the mother to the father. The supreme court reversed and found the trial court had abused its discretion when "[t]here is nothing in the record which materially reflects upon the morality, the character, or the integrity of the petitioner * * * or which indicates that the children are not receiving proper maternal care." *Id.,* 90 N.M. at 468, 565 P.2d 337. In *Boone,* as in the case at bar, the mother had a sexual relationship with a man to whom she was not married. The trial court found that the mother's relationship with the man was immoral and destructive to the children's upbringing. In reversing the change of custody award, the supreme court cited a lack of evidence to support the court's finding, and noted that nothing in the record "reflects upon the morality, the character, or the integrity of the petitioner * * *." *Id.,* 90 N.M. at 468, 565 P.2d 337. The court pointed to evidence indicating that the relationship between the wife and her paramour was discreet; that the wife's paramour spent time with the children and had developed a warm, friendly relationship with them; that the children were well-fed, clean and well-dressed. The supreme court contrasted this relationship with the father's plan to place the children with one of his relatives "where the children will be deprived of the consistent personal attention of either parent." *Id.,* 90 N.M. at 468, 565 P.2d 337.

In this case, as in *Boone,* the mother is the children's primary caretaker. The evidence is uncontradicted that the children have been loved and well-tended. Absent husband's claim of danger to the children and his accusations concerning wife's immorality, there is no evidence that should have altered the court's prior belief that both parents were good people and could care for the children.

Because the evidence does not support the findings relied on, because the findings do not support the conclusions, and because the trial court apparently did not consider the factors of Section 40–4–9, we reverse and remand for consideration of the custody issue.

## WHETHER THE TRIAL COURT'S FINDINGS AND JUDGMENT FAILED TO REFLECT ITS APPROVAL OF THE PARTIES' PROPERTY SETTLEMENT AGREEMENT

At the September hearing, the court orally approved a property settlement agreement purportedly entered into by the parties. The approval of this agreement, however, was not made part of the findings, conclusions or judgment. Rather, the court determined that, based upon assertion of counsel, "no matters affecting property are before this Court * * * " and that "the only matter contested was custody * * *."

There is no contention that the property settlement agreement entered by the parties was improper, or that the agreement did not fairly and equitably divide community property and debts. Nor is there a contention that the court erred in approving the agreement. Rather, wife argues that the court erred by not carrying its oral approval of the agreement forward into the findings and judgment, and she requests that the matter be remanded to "clarify" the agreement and to enter a finding and adjudication consistent with the court's oral ruling.

A review of the record, however, indicates that wife did not request a finding or conclusion concerning this agreement. A party waives specific findings and conclusions if he or she fails to make a tender. Civ.P.R. 52(B)(1)(f). Where a party has failed to request an appropriate finding, any claimed error is not preserved for review on appeal. *See Worland v. Worland,* 89 N.M. 291, 551 P.2d 981 (1976). We believe that wife's failure to request an appropriate finding waives any claim of error.

A different result, however, is reached on the assertion that the court should include or refer to the agreement in the judgment. Community property and indebtedness issues were raised by the parties' pleadings, and evidence was introduced on these matters at the February

hearing. The court made brief oral rulings at the time, but reserved a division of husband's employment termination contract for a later date, requesting briefs from both parties. The parties briefed the issue, and submitted requested findings and issues concerning division of community property and indebtedness. The court, however, did not file written findings or judgment following the February hearing. It appears that the parties subsequently entered into an agreement that presumably divided the property and indebtedness to their mutual satisfaction and that the court orally approved the agreement at the September 11th custody review hearing.

The final judgment, however, does not mention the parties' property agreement. Hence, the question of whether the agreement is part of the judgment and, therefore *res judicata* on the matter of property division is not determined. The court's judgment should reflect that the parties' agreement was approved and/or incorporated into the judgment. Such a procedure brings finality to the property issues, avoids attempts to relitigate claims previously adjudicated, and minimizes the opportunity for a party to claim that certain items of property have not been distributed. This portion of the judgment will be remanded to the trial court so that the parties' stipulation and agreement be adopted or incorporated.

## WHETHER THE COURT ERRED IN ITS REFUSAL TO AWARD ATTORNEY FEES

It is within the sound discretion of the trial court to determine whether to award attorney fees. *Henderson v. Lekvold*, 99 N.M. 269, 657 P.2d 125 (1983). An appellate court will only reverse the trial court's determination if there has been an abuse of discretion. *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976). In determining whether to award attorney fees, a court should consider all factors, including the nature of the proceedings, the complexity of the issues, the relief sought and recovered, the ability of the parties' attorneys and the ability of both parties to pay. *Id.*

The record indicates that at the time of the September hearing, both parties were employed and were earning their own income. While it would appear that husband's income was more than twice that of the wife, financial disparity in terms of wages is only one factor which the court may consider. A consideration of the evidence before the court on the other *Michelson* factors does not point to an abuse of discretion of the trial court's attorney fee decision. We decline to find that the court erred in its determination that each party pay their respective counsel.

## SUMMARY

We determine that the court erred in granting sole custody to husband. If, after reconsideration, the trial court can fashion a joint physical custody arrangement based on the evidence previously taken, then an amended judgment should be entered without a further evidentiary hearing. In the alternative, should the court wish to consider additional evidence so as to fashion a joint custody award in such a way as to assure the minor children's emotional stability, while maintaining frequent and continuing contact with both parents, the court may take additional evidence as needed. We recommend that the parties be given an opportunity to further explore alternative means of resolving their differences through available dispute resolution resources. The good faith efforts of both parties should be turned toward fashioning an agreement which serves these young children. On remand, the court should amend its judgment adopting and incorporating the parties' property settlement agreement. Finally, the court determines that wife should be awarded her attorney fees on appeal, in the sum of $4,000 and all appellate costs.

**IT IS SO ORDERED.**

BIVINS and ALARID, JJ., concur.