791 P.2d 472

**Deborah K. CAMPBELL, Respondent–Appellant,**

v.

**Douglas ALPERS, Petitioner–Appellee.**

No. 11696.

Court of Appeals of New Mexico.

March 20, 1990.

Mary E. Lebeck, Cynthia A. Fry, Lebeck & Fry, P.A., Albuquerque, for respondent-appellant.

Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, for petitioner-appellee.

Paul Snead, Carlsbad, Guardian ad Litem.

## OPINION

DONNELLY, Judge.

Respondent (mother) appeals from an order of the trial court changing custody of the parties' children to petitioner (father). We review the mother's claims that (1) the trial court lacked jurisdiction herein under the New Mexico Child Custody Jurisdiction Act (NMCCJA), NMSA 1978, Sections 40–10–1 through –24 (Repl.Pamp.1989); and (2) the trial court erred in ordering a change of custody. We hold that the trial court had jurisdiction over this matter, but reverse the trial court's order changing custody of the children.

This case has a difficult history. The parties were divorced in 1985. The final decree provided that the parties would have joint legal custody of their two minor sons, with the mother having primary physical custody, and the father having specific rights of visitation. The two boys are presently eight and ten years of age.

Entry of the final decree turned out to be the beginning rather than the end of litigation between the parties. In early 1986, the child visitation provisions of the decree were modified to accommodate the mother's impending remarriage and her move to Maryland with the children. The trial court also held the father in contempt based upon his failure to make timely child support payments and denied his motion for reduction of support payments. In 1987, the mother twice filed motions with the New Mexico court for issuance of orders to show cause because of the father's failure to make timely child support payments. One of these hearings also involved problems with child visitation. These motions were resolved in favor of the mother.

In 1988, additional problems occurred concerning visitation with the children. In May 1988, the mother filed a motion asking the trial court to modify the visitation provisions. The motion also stated that she had filed proceedings in Maryland seeking to stay the father's impending summer visitation and requesting modification of the visitation provisions of the New Mexico decree. The mother's motion alleged neglect and misconduct by the father during the children's previous visit. The mother also raised issues concerning the father's problems with alcohol, his failure to make timely child support payments, and his failure to provide health insurance for the children.

The New Mexico court conducted a lengthy hearing on the issues and ordered that a number of restrictions be placed upon the father's conduct during his visitation with the children. The father was directed to enroll in a supervised alcohol Antabuse program, and the court ordered that after the father entered an Antabuse program, visitation with the children should then proceed. The father enrolled in a supervised Antabuse program, and the children came to New Mexico for summer visitation during 1988.

The mother failed to send the children to New Mexico for their scheduled 1988 Christmas visit with the father. Thereafter, in February 1989, the father filed a motion asking the trial court to hold the mother in contempt for obstructing his rights of visitation and to award custody of the children to him. The mother responded that she had not sent the children to visit him at Christmas because, contrary to the court's order, he had not complied with the court's directive that he participate in an Antabuse program, and he had been drinking while the children visited him during the previous summer.

The court held a hearing on the father's motion in March 1989. During that hearing, the court modified its prior order concerning the father's participation in a supervised Antabuse program and required the father to enter a supervised Antabuse program at least one week before the children were to arrive for their summer visit, and directed father's attorney to certify such facts to the mother. The father also was ordered to remain continuously in an Antabuse program during each visitation; however, he was not required to continue

in the Antabuse program after the visitation period ended. Additionally, the trial court directed the mother's attorney to notify the court in advance if the children were not going to be sent to New Mexico for visitation.

The father's motion for change of custody was scheduled for hearing on June 26, 1989. Shortly before the hearing, the mother filed a motion challenging the court's jurisdiction. By stipulation of counsel, that motion was heard on the day originally scheduled for the hearing on the merits. The trial court denied the motion, finding that it had jurisdiction, and scheduled a hearing on the change of custody motion for July 5, 1989. At the close of the July 5 hearing, the trial court ordered that custody of the children be changed to the father. The mother filed an appeal from this order and requested a stay during the pendency of the appeal. The trial court denied the motion for a stay. On appeal to this court, we directed that a stay of proceedings be entered, continuing custody of the children with the mother pending resolution of this appeal on the merits. *See Alpers v. Alpers* (Ct.App.1990).

## I. JURISDICTIONAL ISSUES

■ The mother contends that the trial court lacked subject matter jurisdiction to modify child custody because the NMCCJA limits this state's jurisdiction over interstate child custody proceedings. In addressing this contention, we note that the term "custody determination" as used in the NMCCJA includes proceedings involving disputes relating to child visitation rights. *See* § 40–10–3(B); *Olsen v. Olsen*, 98 N.M. 644, 651 P.2d 1288 (1982). The term "proceeding" as used in the NMCCJA has been interpreted to refer to the most recent proceeding concerning child custody, not the initial proceeding. *See Trask v. Trask*, 104 N.M. 780, 727 P.2d 88 (Ct.App. 1986). On appeal, the mother does not argue that the trial court should have declined jurisdiction because it was an inconvenient forum. *See* § 40–10–8.

■ We note that Section 40–10–4, the pertinent jursidictional provision, was amended in 1989 to grant continuing jurisdiction to New Mexico when it has made prior custody determinations as long as the child or one of the contestants remained in New Mexico. *See* § 40–10–4(B). The mother argues this amendment does not apply because the father filed the motion to change custody in February 1989, and the amendment's effective date was not until June 16, 1989. We disagree. *Olsen* requires us to retroactively apply the provisions of the NMCCJA. We hold that the trial court properly exercised jurisdiction pursuant to Section 40–10–4(B). Furthermore, we hold that the trial court also had jurisdiction under Section 40–10–4(A) as it existed prior to the 1989 amendments.

Prior to 1989 the NMCCJA set out four different grounds for a court's exercise of jurisdiction over child custody proceedings. *See* § 40–10–4(A) (Repl.Pamp.1986). The trial court is invested with jurisdiction if it meets the requirements of any one of the statutory grounds. *See Olsen v. Olsen; Serna v. Salazar*, 98 N.M. 648, 651 P.2d 1292 (1982). The mother contends, and the father does not dispute, that Maryland, not New Mexico, is the "home state" of the children under the NMCCJA. *See* §§ 40–10–3(E) and –4(A)(1); *Trask v. Trask.* However, home state jurisdiction is only one of the four jurisdictional bases. *See* § 40–10–4(A).

Section 40–10–4(A)(2) as it existed prior to the 1989 amendments provided that a trial court in New Mexico is competent to decide child custody matters and has jurisdiction to modify a prior custody decree if:

it is in the best interest of the child that a district court of New Mexico assume jurisdiction because:

(a) the child and his parents, or the child and at least one contestant, have a significant connection with New Mexico; and

(b) there is available in New Mexico substantial evidence concerning the child's present or future care, protection, training and personal relationships....

§ 40–10–4(A)(2) (Repl.Pamp.1986).

In *Meier v. Davignon*, 105 N.M. 567, 734 P.2d 807 (Ct.App.1987), this court upheld

the right of a New Mexico trial court to decide a custody dispute even though the home state of the child was Oklahoma. In *Meier,* as in this case, the child had been born in New Mexico, and the parents were married and divorced in New Mexico. After the divorce, the mother and child moved to Oklahoma, but the child continued to visit New Mexico for substantial periods of time. This court found that the New Mexico court continued to have jurisdiction to determine custody disputes between the parties, and that "there remained sufficient significant contacts with New Mexico to preserve the continuing jurisdiction of the original forum." *Id.* at 570, 734 P.2d at 810.

In this case, the children had lived in New Mexico all their lives prior to their move to Maryland. Moreover, New Mexico courts have been requested by the parties to resolve both support and custody disputes. Since the NMCCJA concerns subject matter rather than personal jurisdiction, the fact that a party has submitted to the jurisdiction of the court in a previous proceeding or during the present proceeding does not confer jurisdiction on the courts of New Mexico. Nevertheless, the existence of prior litigation over custody in the same court has been considered a significant factor in determining whether that court has jurisdiction over a later child custody dispute because of the availability of evidence in such jurisdiction relating to the present or future care, protection, training, and personal relationships of the children. *See, e.g., Herrero v. Matas,* 447 So.2d 335 (Fla.Dist.Ct.App.), *petition for review dismissed,* 453 So.2d 44 (1984); *Clark v. Atkins,* 489 N.E.2d 90 (Ind.Ct. App.1986); *In re Marriage of McEvoy,* 414 N.W.2d 855 (Iowa Ct.App.1987); *Joseph E.H. v. Jane E.H.,* 283 Pa.Super. 109, 423 A.2d 739 (1980).

The mother emphasizes the importance of the evidence which is available in Maryland. We recognize that Maryland, as the home state of the children, does in fact have evidence concerning their performance in school and their relationships with family and other individuals in Maryland. Additionally, the record shows that the children were evaluated by Maryland mental health professionals, and that this evidence is available in Maryland. However, the factual issues in this proceeding also involved questions concerning the father's drinking problem and issues concerning the care, protection, training, and personal relationships of the children that would be available in this state if their custody were transferred to the father. Both the maternal and paternal grandparents of the children reside in New Mexico. Evidence on these factors is available here, not in Maryland. The availability of evidence on similar issues has been held by courts in other jurisdictions to be a significant factor in determining whether a state has jurisdiction over a child custody proceeding under the UCCJA. *See, e.g., Reeve v. Reeve,* 391 So.2d 789 (Fla.Dist.Ct.App.1980); *In re Marriage of McEvoy; Stuart v. Stuart,* 516 So.2d 1277 (La.Ct.App.1987); *Joseph E.H. v. Jane E.H.*

Based upon our analysis of the factors discussed herein, we determine that the trial court had jurisdiction over the parties and the minor children.

## II. CHANGE OF CUSTODY

At the July 5, 1989 hearing, which resulted in the order changing custody of the children to the father, the mother did not present any evidence, nor did she submit proposed findings of fact and conclusions of law. On appeal she contends this was due to mistake, inadvertence and confusion concerning the arrangements for the hearing. We agree, however, with the father that this is a factual issue that cannot be resolved by this court on appeal. Similarly, both parties raise issues in their briefs concerning the trial court's order changing custody. They refer in part to matters not presented to the trial court which cannot be relied upon by this court on appeal. *See State v. Martin,* 101 N.M. 595, 686 P.2d 937 (1984).

█ The mother's failure to submit proposed findings of fact and conclusions of law forecloses any challenge by her that the trial court's findings were not sup-

ported by substantial evidence. *See McLam v. McLam,* 85 N.M. 196, 510 P.2d 914 (1973); *Dillard v. Dillard,* 104 N.M. 763, 727 P.2d 71 (Ct.App.1986). This omission does not, however, preclude appellate review as to whether the court's findings of fact support the conclusions of law or the judgment adopted by the court. *See Merrill v. Merrill,* 82 N.M. 458, 483 P.2d 932 (1971).

The trial court found, among other things, that the father is a fit and proper person to be awarded custody and that "in order to ensure protection of the minor children this Court will Order that the [father] should maintain himself on Antibuse [sic] under a control program." On review of the court's findings and conclusions of law, we determine that the trial court erred in its determination that a material change of circumstances existed requiring the entry of an order changing custody of the children to the father. *See id.* (record does not reveal sufficient grounds indicating a basis for the trial court's conclusion that a material change of circumstances existed showing necessity or justice for modifying child custody provision).

■ In considering a motion for modification of child custody, a court may modify a custody order only upon a showing of a substantial change in circumstances affecting the best interests and welfare of the child, and a showing that such change of circumstances has occurred since the entry of the prior custody order. *Schuermann v. Schuermann,* 94 N.M. 81, 607 P.2d 619 (1980); *Davis v. Davis,* 83 N.M. 787, 498 P.2d 674 (1972); *Seeley v. Jaramillo,* 104 N.M. 783, 727 P.2d 91 (Ct.App. 1986). This rule is based upon policy grounds recognizing that:

> [f]requent changes of schools and home locations, differences in family structures and in parental personalities are difficult for children to adapt to even under the best of circumstances. Modifications in custody should not be granted too quickly. Once custody has been awarded to a parent, this Court has held that the best interests of the child ordinarily will not be served unless a sub-

stantial change has occurred in the circumstances of the custodial home or in the capacity of the custodial parent.

*Schuermann v. Schuermann,* 94 N.M. at 83, 607 P.2d at 621. *See also Seeley v. Jaramillo.* Accordingly, in child custody modification proceedings, there is a presumption of reasonableness in favor of the previous custody order, and the burden is on the party seeking a modification to show that there has been a substantial change of circumstances affecting the child's welfare. *Merrill v. Merrill; Seeley v. Jaramillo.* Once the showing has been made, however, the standard for determining which parent should have custody of the child is the same standard applicable to initial custody proceedings. The controlling question is still the best interests and welfare of the children. *Schuermann v. Schuermann; Merrill v. Merrill; Seeley v. Jaramillo.*

■ In this case, the father's motion for change of custody alternatively sought other relief. The change of custody motion was based on the allegation that the mother did not send the children for the Christmas 1988 visit. The mother's response admitted that the children had not visited their father at Christmas but asserted that the father failed to comply with the previous court orders regarding visitation and failed to participate in an Antabuse program.

Here, the father did not pursue contempt sanctions against mother. Instead, he asked the court to change custody on the basis of one missed visit. The trial court's order changing custody found as fact that the mother had "repeatedly disobeyed the orders of this Court." The order does not, however, find that the mother's violations of prior court orders were either willful or intentional. Additionally, the record does not reflect that the father presented evidence indicating that it would be in the best interests of the children to award custody to the father, nor does the court's order contain any findings or conclusions that the change of custody is in the best interests of the children. *See* NMSA 1978, § 40–4–9 (Repl.Pamp.1989); *see also Fitzsimmons v.*

*Fitzsimmons,* 104 N.M. 420, 722 P.2d 671 (Ct.App.1986).

The father argues that under *Lopez v. Lopez,* 97 N.M. 332, 639 P.2d 1186 (1981), the trial court could properly order a change of custody to force the mother to comply with its orders concerning visitation of the children. He argues that *Lopez* permits a change of custody when "the custodial parent *intentionally* takes action to frustrate or eliminate the visitation rights of the non-custodial parent." *Id.* at 334, 639 P.2d at 1188 (emphasis added). *See also Hester v. Hester,* 100 N.M. 773, 777, 676 P.2d 1338, 1342 (Ct.App.1984). In *Lopez,* the custodial parent forcibly abducted the child, sent the child to various out-of-state locations, and refused to tell the noncustodial parent where the child was or otherwise allow the noncustodial parent any contact with the child for a substantial length of time. *See also Alfieri v. Alfieri,* 105 N.M. 373, 733 P.2d 4 (Ct.App.1987), which also involved the custodial parent removing the child from the state and precluding contact by the noncustodial parent.

The dispute in the instant case, however, unlike *Lopez* and *Alfieri,* centers on whether the order directing a change of custody was in the best interests of the children. Under Section 40-4-9(A), in determining issues of custody, the court must consider all relevant factors affecting the children's welfare, including:

(1) The wishes of the ... parents ...;
(2) The wishes of the [children] as to [their] custodian;
(3) The interaction and interrelationship of the [children] with [their] parents ... siblings and any other person who may significantly affect the [children's] best interest;
(4) The [children's] adjustment to [their] home, school and community; and
(5) The mental and physical health of all individuals involved.

In the absence of the existence of any evidence in the record and the adoption of findings concerning the best interests and welfare of the children, the court's order changing custody must be reversed. *Merrill v. Merrill. See also Normand v. Ray,* 107 N.M. 346, 758 P.2d 296 (1988) (court erred in not permitting evidence to be introduced concerning which custodial arrangement was in best interests of child); *Newhouse v. Chavez,* 108 N.M. 319, 321, 772 P.2d 353, 355 (Ct.App.1988) (in exercising its discretion to modify custody, trial court must also evaluate best interests of child). The extreme remedy recognized in *Lopez* should be carefully reserved to those cases wherein other reasonable means of enforcing parental visitation rights have been shown to be unavailing and where there is a showing that the change of custody is in the best interests of the children.

Lastly, the mother argues that she should be awarded attorney fees incident to this appeal, citing *Miller v. Miller,* 96 N.M. 497, 632 P.2d 732 (1981). In *Miller* the trial court found as fact that the mother needed an award of attorney fees in order to enable her to efficiently present her case. No such finding was made by the trial court in this case, and the mother advances no other authority for the award. We therefore conclude that both parties should bear their own costs and attorneys fees on appeal.

In light of our determination that the trial court's order changing custody should be reversed, we do not reach the other issues raised on appeal.

The order of the trial court changing custody of the children to the father is reversed.

IT IS SO ORDERED.

BIVINS, C.J., and APODACA, J., concur.